## UNITED STATES of America

v.

## Michael T. RINALDI, Appellant.

## No. 85–6210.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 20, 1986.

Decided Jan. 13, 1987.

---

Thomas Lumbard, Washington, D.C., appointed by the Court, for appellant.

Suzanne G. Curt, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Donald Allison, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before EDWARDS and WILLIAMS, Circuit Judges, and GREEN, District Judge [*].

Opinion PER CURIAM.

PER CURIAM:

Michael T. Rinaldi appeals from a conviction entered after he pled guilty to one count of conspiring to import heroin in violation of 21 U.S.C. § 963. Pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure,[1] Rinaldi entered his plea on

---

[*] District Judge Joyce Hens Green of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

**1.** Fed.R.Crim.P. 11(a)(2) provides as follows:
"*Conditional Pleas.* With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea."

the condition that he be allowed to appeal several adverse pretrial rulings made on his motions to dismiss the indictment and to suppress evidence. In those motions, he argued that he had been promised total immunity from prosecution, and that the evidence proffered at the time of his plea was derived from statements made under that grant of immunity and therefore could not be used against him. While we conclude that the District Court properly denied the motion to dismiss the indictment, we hold that its findings concerning the independent nature of certain evidence proffered by the government were inadequate, and therefore remand the case for a further evidentiary hearing.

## I

On July 29, 1984, Rinaldi traveled with Dr. John Letcher to Thailand for the purpose of purchasing heroin. Rinaldi had been given the names of several heroin sources in Bangkok by Philip Douglas Haney, a Washington, D.C. drug dealer who had made several trips to Thailand himself. In exchange for this information, provided at several meetings during the spring of 1984, Haney was to receive a percentage of the heroin Rinaldi brought back. Rinaldi and Letcher spent approximately two weeks in Bangkok and purchased 24 grams of heroin, which Letcher hid in Rinaldi's person by means of a sigmoidoscope. The two returned to the United States on August 12, arriving in the Washington area at National Airport, where they were met by Martha King and Christine Reardon, the woman with whom Rinaldi lived and whom he later married. Immediately upon their return, the four drove to the apartment Rinaldi and Reardon shared, and Letcher retrieved the heroin and divided it in half. After sampling the drug, Letcher and King left with Letcher's share.

Shortly before or sometime during Rinaldi and Letcher's trip abroad, Haney was arrested on drug charges in Virginia and agreed to become an informant. The police had previously learned of the activities of Rinaldi, Reardon and someone known to them only as "Dr. John" from several Afghani nationals arrested between December, 1983 and June, 1984. The police questioned Haney about the three, and he confirmed that Rinaldi and Reardon dealt in narcotics, describing in some detail Rinaldi's recent venture to Bangkok. He did not disclose that he was expecting a share of Rinaldi's cache, however, nor did he provide "Dr. John's" last name, which he apparently did not know.

Armed with this information, Sergeant Raymond Gonzales and Detective Alfred McMaster of the Metropolitan Police Department contacted Rinaldi and Reardon at their apartment on September 13, 1984. The police advised them that they knew of their drug activities and wanted their cooperation; they asked both Rinaldi and Reardon to provide the names of others involved in local drug trafficking, telling them that while there was no guarantee they would not be prosecuted, their cooperation could result in grants of immunity. Rinaldi and Reardon wrote down several names on note cards, though neither identified Letcher. The police made no mention of Letcher, hoping that the two would demonstrate their trustworthiness by offering his name, and similarly said nothing of Rinaldi's trip. Three days later, McMaster and Gonzales arranged a second meeting at the Washington Sailing Marina in Alexandria, Virginia. Rinaldi and Reardon were interviewed separately, and McMaster told Rinaldi that they knew everything about "Dr. John." According to the police, Rinaldi then admitted that he knew Letcher and divulged the details of the Thailand trip, including the fact that Haney was expecting a portion of the heroin.

On September 18, 1984, Rinaldi and Reardon met with an Assistant United States Attorney and agreed to work as informants. They accepted the government's offer of use immunity in exchange for their cooperation and signed identical immunity agreements. Sometime thereafter, the police became suspicious that Rinaldi was alerting people to the investigation, a fact they later confirmed by tap-

ing a meeting between Haney and Rinaldi. The United States then sought indictments against both Rinaldi and Letcher, calling Reardon to testify before a grand jury in October, 1984 and February, 1985. Indictments were returned against both men on April 2, 1985.

Rinaldi moved to dismiss his indictment on the ground that he had been promised complete immunity from prosecution, and to suppress certain statements and evidence as fruits of his immunity-induced statements. The District Court held a series of hearings beginning on June 17, 1985 and denied the motion to dismiss on October 30, 1985, concluding that the government only offered Rinaldi use, rather than transactional, immunity.[2] The next day, the District Court denied the motion to suppress Reardon's testimony, finding that she was developed as an independent witness simultaneously with Rinaldi. She thereafter invoked the marital privilege, and the District Court ruled that while she was unavailable as a witness, her prior testimony could be used at trial. On November 1, Letcher pled guilty and agreed to testify against Rinaldi, providing the full details of the Thailand excursion during the course of his plea. Rinaldi moved to exclude Letcher's testimony, claiming that Letcher's identity had been learned from him. The District Court overruled that motion as well, concluding that the government had been in a position to identify Letcher without the benefit of Rinaldi's testimony. Rinaldi then entered a conditional plea of guilty to one count of conspir-

ing to import heroin. At that time, the government made a proffer of its evidence which consisted of (1) Haney's testimony; (2) Reardon's prior testimony before the grand jury; (3) Letcher's testimony; and (4) physical evidence such as Rinaldi's passport, plane tickets and a plastic proctoscope.

## II

As the Supreme Court made clear in *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the fifth amendment forbids the government from using, in any way, testimony compelled through a grant of immunity. While the government may prosecute one who testifies under such a grant, the prosecution cannot be based on "knowledge and sources of information obtained from the compelled testimony." *Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661. The burden rests with the government "to prove that the evidence it proposes to use is derived from a source wholly independent of the compelled testimony." *Id.* at 460, 92 S.Ct. at 1665. While it may be that the government could have discharged this burden here, we are unable to determine from the present record that it in fact did so and must therefore remand for further proceedings. In so doing, we write briefly to identify several concerns with the trial court's rulings.

 As an initial matter, however, we address Rinaldi's contention that the indictment should have been dismissed because he had been promised complete immunity.[3]

---

**2.** Transactional immunity affords the recipient of such a grant complete immunity from prosecution for the act or commission in question. Use immunity, on the other hand, does not bar prosecution, but rather prevents the government from using in any prosecution the evidence derived directly or indirectly from any immunized testimony.

**3.** Before this court, Rinaldi argues that the indictment should have been dismissed because it was based on evidence derived from his immunized testimony. No such claim was presented below, however, nor did he reserve the right to raise that question on appeal. Not only does the motion to dismiss make no mention of the

grand jury proceedings, the trial judge's ruling on the motion addresses only the nature of the immunity offered, and Rinaldi's motion for reconsideration asks only that the court "reconsider its finding that the Government did not grant defendant Rinaldi 'transactional' immunity." Motion to Reconsider at 1. The agreement Rinaldi signed with the government reserved his right to seek appellate review of this specific ruling. In explaining the agreement, counsel for Rinaldi stated that Rinaldi was promised "immunity from the day he was born until the day he signed the agreement. In fact, he was promised that he would not be prosecuted.... That is essentially the issue that he wants to preserve [for appeal]." Transcript of November

The trial judge heard extensive testimony over the course of several months from the police officers, the Assistant United States Attorney, Rinaldi, and Reardon, and expressly found that at no time was Rinaldi promised total immunity. Rather, the judge concluded "that the immunity agreement ... was of a limited type. It was only a use immunity agreement. It was not a transactional or formal immunity agreement." Transcript of October 30, 1985 proceedings at 10.[4] Rinaldi has in no way impugned this finding on appeal, nor does it appear that he could, as it is amply supported by the record. We therefore find no error in the District Court's denial of Rinaldi's motion to dismiss, and affirm that ruling.

■■■ The absence of similar specific factual findings as to the source of the government's proffered evidence, however, prevents us from affirming the trial court's rulings on Rinaldi's various motions to suppress. For example, Rinaldi sought to exclude Christine Reardon's grand jury testimony because she had been present at the September 18, 1984 meeting where he discussed under a grant of immunity the details of his trip to Thailand.[5] The government argued both below and before this court that Reardon's testimony was untainted because the police approached and developed her as a witness independent of Rinaldi, and she knew all the salient facts of Rinaldi's heroin importation scheme; thus, the government contends, regardless of Rinaldi's immunized disclosures, the police would inevitably have learned the details of the crime from her. Our difficulty

is that while the trial judge could conceivably have made such specific findings based on the record before him, he did not do so, but rather summarily denied the motion to suppress. Tr. Oct. 31, 1985 at 19 and 21. The record is not so one-sided, however, that we may affirm this denial as the only reasonable decision that could have been reached. It is undisputed that the police never questioned Reardon about the Thailand trip until *after* Rinaldi discussed it with them at the September 18 meeting. There is accordingly a question of fact as to how much Reardon knew prior to that meeting and what additional knowledge, if any, she may have gained as a result of listening to Rinaldi's immunized statements. In addition, Reardon was asked a series of leading questions before the grand jury, yet the government made no effort to demonstrate that the information upon which these questions were based was not derived from Rinaldi's disclosures. *See Pillsbury v. Conboy*, 459 U.S. 248, 264–65, 103 S.Ct. 608, 617–18, 74 L.Ed.2d 430 (1983) (Marshall, J., concurring) (use of immunized grand jury testimony as a basis for subsequent questioning of same witness is impermissible derivative use of immunized testimony); *id.* at 282–96, 103 S.Ct. at 626–34 (Stevens and O'Connor, JJ., dissenting) (same); *see also id.* at 257 n. 12, 103 S.Ct. at 613 n. 12 (majority opinion declining to reach issue). As the government bore the burden of proving that Reardon's testimony was free of taint and independently derived, we may not infer findings favorable to it on these questions. *United States v. Hampton*, 775 F.2d 1479, 1485–86 (11th Cir.1985) (government must

6, 1985 proceedings at 40–41. By failing to raise the issue of tainted grand jury evidence below, or to preserve the question for appeal, Rinaldi waived his right to challenge the indictment on this ground. *See* Fed.R.Crim.P. 11(a)(2) advisory committee's note at 51 (1986) ("requirement that ... defendant 'reserv[e] in writing the right to appeal from the adverse determination of any specified pretrial motion,' ... will identify *precisely what pretrial issues have been preserved for appellate review*") (emphasis added); *see also United States v. Carrasco*, 786 F.2d 1452, 1454 (9th Cir.1986) (where defendant's writing

provided "notice that the plea was intended to be conditional, [but] did not specify which pretrial issues would be reserved for appeal," defendant failed to enter conditional plea).

**4.** Transcripts will be identified by the date and page—*e.g.,* "Tr. Oct. 30, 1985 at 10."

**5.** There is some dispute over whether the meeting took place on September 18, or September 19 and 20. The exact timing of the meeting is unimportant for present purposes, however, and the court will, for the sake of convenience, refer to it as the September 18 meeting.

affirmatively establish that none of evidence presented to grand jury was derived directly *or indirectly* from immunized testimony). Rather, the District Court must make specific findings on the independent nature of this proposed evidence.[6]

We are similarly troubled by the trial court's ruling concerning Dr. Letcher's anticipated testimony. The court found that the government was "in a position to know about Dr. Letcher other than through Rinaldi," Tr. Nov. 6, 1985 at 30, noting that the police had a picture of Letcher as well as information about him provided by Haney. *Id.* The government concedes, however, that neither Haney nor the Afghani nationals who supplied the picture actually knew Letcher's last name, and further, that the police first obtained it from Rinaldi. Indeed, three months after they first learned of "Dr. John," the police still had not located or identified him. While it may seem reasonable to assume that Reardon could have led the police to Letcher, the trial court did not so rule, nor has the government directed our attention to any testimony in which Reardon in fact stated that she knew Letcher's last name or his address prior to hearing Rinaldi provide them to the police while under immunity. Once again, in view of the allocation of burdens on this issue, we may not indulge assumptions favorable to the government. The evidence cited by the trial court simply demonstrates that the police might have, or at best could have, identified Letcher without benefit of Rinaldi's immunized statements; it does not, however, amount to a showing that the government's eventual discovery of Letcher was inevitable.[7]

 With respect to the testimony of Haney, the trial court did specifically find,

based on the testimony of Rinaldi, Officers McMaster and Gonzales, and Haney himself, that the police contacted Haney well before Rinaldi signed any immunity agreement and that Haney discussed Rinaldi's trip to Bangkok with "Dr. John" *before* the police first contacted Rinaldi on September 13, 1984. Tr. Oct. 30, 1985 at 6. As these factual determinations find ample support in the record, we are confident that Haney's pre-September 13 disclosures are untainted. However, Haney provided additional information—specifically, the name of the airline Rinaldi and Letcher flew and the cost of their tickets—after the police confronted him about his anticipated share of heroin, a fact they had learned from Rinaldi. This additional information, therefore, was indirectly derived from Rinaldi's immunized statements and, accordingly, was tainted. It may be that these additional facts were essentially irrelevant to the government's case, or that the government would have inevitably learned them anyway, but these are questions for the trial court in the first instance and we pass no judgment on them now. We similarly cannot determine whether the physical evidence proffered by the government was tainted, as the answer to that question will turn to a substantial extent on the trial court's findings concerning the independent nature of Reardon and Letcher's testimony.

We appreciate that the trial court conducted extensive and probing hearings on these questions sufficient to resolve them. However, in the absence of specific findings to support the court's ultimate rulings, we are constrained to remand this case. We accordingly vacate the judgment of conviction, thereby freeing appellant to withdraw his conditional guilty plea on remand. Appellant, of course, is free to pro-

---

6. We do, however, reject outright Rinaldi's assertion that because Reardon misunderstood the scope of *his* immunity, her testimony was tainted. Reardon's testimony was not, merely by virtue of that alleged misunderstanding, "derived" from Rinaldi's testimony. *Compare United States v. Kurzer,* 534 F.2d 511, 517–18 (2d Cir.1976).

7. On remand, the District Court should also consider the additional question, pressed on appeal though apparently not raised below, of whether Letcher's anticipated testimony was motivated by, and therefore indirectly derived from, Rinaldi's immunized statements to the police, and what effect, if any, that may have on its admissibility. *See United States v. Hampton,* 775 F.2d at 1488.

ceed to trial after the District Court enters its additional findings and rulings on the motions to suppress. Should he so elect, we leave to the learned trial judge to decide whether or not recusal would be appropriate in light of appellant's earlier plea.

The trial court's ruling on the motion to dismiss the indictment is affirmed, and this case is remanded for a further evidentiary hearing and explicit findings concerning the motions to suppress.

*So ordered.*