**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald W. STRECK, Defendant–
Appellant.**

**No. 91–3395.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 15, 1991.

Decided March 3, 1992.

I

From 1983 to 1985, Streck was an independent contractor in the trucking industry. Among his clients were a number of entities owned by Frank Walsh. In 1983, Streck began diverting funds from various Walsh entities into a bank account held by American Carriers, Inc. ("ACI"), a corporation owned and controlled by Streck and his wife. Streck forged endorsements on checks to and from Walsh entities, then second endorsed the checks to ACI, which in turn transferred the funds into Streck's personal account. Streck reported only a fraction of this amount as personal income on his federal income tax returns.

In April 1985, IRS agent Mary Kifer began a civil audit of Streck's 1983 personal income tax return, followed by an audit of his 1984 and 1985 returns in October 1986. After obtaining certain financial records from Nick Mancini, Streck's accountant and authorized representative, Kifer concluded that Streck's unreported income came from ACI. Kifer then audited ACI's corporate returns and found that the bulk of this income ultimately derived from Walsh entities. Kifer also uncovered sizable discrepancies between Streck's expenditures and income and concluded that Streck had an unreported source of income related to the unexplained deposits coming from ACI. In December 1985, Mancini admitted to Kifer that $91,000 in unreported income initially deposited to ACI's account should have been reported on Streck's 1983 personal return. By November 1986, Kifer had received documentation indicating that this $91,000 in unreported income was drawn on an account of the Walsh entities made payable to Deutsche Credit Corporation and second-endorsed to ACI. Streck later also conceded that he should have reported a deposit to ACI's account of $156,000 and a deposit to his personal account of $40,946. Kifer also suspected that $336,000 in 1984 and over a million dollars in 1985, although represented by Mancini to be loans, were also unreported income. Kifer requested documentation from Mancini confirming that these amounts were

Kathleen Brinkman, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Charles J. Walsh (argued and briefed) and Steven R. Rowland, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, Newark, N.J., for defendant-appellant.

Before KENNEDY and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendant Donald W. Streck appeals the district court's order, entered on remand from this court, finding that the government did not rely upon immunized testimony in obtaining an indictment against Streck for tax evasion. Upon review, we affirm.

indeed loans, but Mancini never supplied the requested documents.

On March 2, 1987, Kifer closed her audit of Streck's 1983 return with a total finding of $275,000 in unreported income. On May 20 of that year, Kifer referred the 1984 and 1985 tax returns for criminal investigation and, on August 7, referred the 1983 return for criminal investigation as well.

Meanwhile, on February 9 and 10, 1987, Streck testified before a grand jury in San Francisco investigating criminal charges against Frank Walsh. Streck testified that he had diverted money from Walsh entities as commissions he believed Walsh owed him for services rendered. Streck was granted use and derivative use immunity for his testimony.

On March 23, 1987, Assistant United States Attorney Larry Leigh wrote a letter to Walsh's defense counsel about Streck's diversion of funds (the "Leigh letter"). The Leigh letter represented that, if called to testify, Streck would admit having secretly diverted over $1,000,000 from Walsh during 1983 to 1986. The Leigh letter later became part of the record in the bankruptcy proceedings of certain Walsh entities in the District of New Jersey.

In response to Kifer's referrals, IRS agent James Kuntz began a criminal investigation of Streck's 1984 and 1985 tax returns in August 1987. Kuntz received the spread sheets from Kifer's audits itemizing the dates and amounts of deposits that she had identified as likely sources of Streck's unreported income. Upon review of Kifer's report, Kuntz concluded that, in order to determine whether the disputed funds were loans, as Streck maintained, or were in fact taxable income that Streck had failed to report, he would need to obtain copies of the deposited checks and to interview the payors and payees of the checks in question. Accordingly, Kuntz subpoenaed the records of Streck's banks and those of Mancini. On November 17 and 18, 1987, Kuntz also asked the FBI if he could review subpoenaed bank records of Streck and ACI in the FBI's possession.

At this point, Kuntz was informed by other IRS agents that Assistant United States Attorney Maria Beardell in the District of New Jersey suspected that the unreported income was derived from Walsh entities.[1] Kuntz then decided to compare Streck's and ACI's deposit records with Walsh records but found no corresponding Walsh checks in its records. Kuntz did, however, find copies of the checks that made up these deposits in ACI's bank records. These checks were payable from Walsh entities to various payees, but had been second endorsed to ACI and deposited to its account. Kuntz also discovered five checks payable to Walsh but second endorsed to ACI.

On November 18, 1987, Novalyn Winfield, Assistant United States Trustee for the Bankruptcy Court in New Jersey, advised Kuntz of a letter dated May 18, 1987, by an attorney for Walsh, concerning a criminal complaint by a Walsh company against Streck for embezzlement. This letter apparently referred to the Leigh letter, and was therefore tainted. On December 17, 1987, Winfield sent Kuntz a copy of the Leigh letter. Kuntz proceeded with his investigation and uncovered more checks made payable to Walsh but second endorsed to ACI. Kuntz also contacted payees of the checks and discovered that the signatures had been forged. In early 1988, Kuntz interviewed Marc Zoldessy, general counsel for one of the Walsh entities, who told Kuntz he had independently uncovered misappropriations by Streck between September 1985 and June 1986.

On November 3, 1988, Streck was indicted on five counts. Counts one through three charged Streck with attempt to evade federal income tax in 1983, 1984, and 1985, respectively, in violation of 26 U.S.C. § 7201 (1988). Counts four and five charged Streck with concealing an asset in bankruptcy and making a false statement in a bankruptcy proceeding, respectively,

---

1. While it is somewhat unclear from the record whether Beardell's information was based upon Streck's immunized testimony and, therefore, tainted, we find resolution of this factual issue irrelevant to our analysis. *See infra* Part III.

both in violation of 18 U.S.C. § 152 (1988). Streck filed a pre-trial motion to dismiss or, in the alternative, for a hearing, asserting that evidence presented to the grand jury was derived from his earlier compelled testimony before the grand jury in San Francisco and before the New Jersey State Investigation Commission, for which Streck had also been given use and derivative use immunity. The court held a hearing on March 6 and 7, 1989, at which two IRS agents testified and supporting documents were presented. On March 21, 1989, the district court concluded that the United States had met its burden of showing that the evidence presented to the grand jury was derived independently of any immunized testimony, in satisfaction of *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), and accordingly denied Streck's motion to dismiss.

A jury trial commenced on June 27, 1989. On July 14, the jury returned a verdict of guilty on the tax evasion charges and not guilty on the bankruptcy charges. Streck was sentenced to thirty months of imprisonment and six months probation.

On appeal to this court, *United States v. Streck*, 914 F.2d 1495 (6th Cir.1990) (per curiam) [hereinafter *Streck I*], the panel noted that "the district court made no specific findings of fact for us to determine whether its findings as to the independent sources of the government's evidence were clearly erroneous or not." *Id.* at 2 [914 F.2d 1495 (table).] The panel therefore remanded for the district court to make specific findings as to the independent sources of the grand jury evidence. *Id.*

On remand, the district court made numerous findings of fact and concluded that the government had satisfied its burden of showing that its grand jury evidence was untainted. Streck then filed this appeal.

## II

Challenges alleging the use of immunized testimony to secure a conviction are governed by the seminal case of *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), and its progeny. *Kastigar*, interpreting 18 U.S.C. § 6002 (1988),[2] held that the "use and derivative use" immunity provided by that statute "bar[s] the use of compelled testimony as an 'investigatory lead,' and also bar[s] the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures." *Id.* at 460, 92 S.Ct. at 1664–65 (footnote omitted). Thus, "[o]ne raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Id.* at 461–62, 92 S.Ct. at 1665. We review a district court's determination that the government has satisfied its burden under *Kastigar* for clear error. *United States v. Overmyer*, 899 F.2d 457, 463 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990). A finding is clearly erroneous when, despite evidence to support it, the reviewing court on the entire evidence harbors a definite and firm conviction that a mistake has been made. *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir.1988).

 This court has read *Kastigar* to hold that the government must show that "its evidence against the witness is neither directly nor indirectly traceable to the immunized testimony." *United States v. Pennell*, 737 F.2d 521, 528 (6th Cir.1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). In *Streck I*, we also quoted with approval *United States v. North*, 910 F.2d 843 (D.C.Cir.1990), *modified*, 920 F.2d 940 (D.C.Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991), where the Circuit Court for the District of Columbia noted that a district court " 'must make specific findings on the independent nature of this proposed [allegedly tainted] evidence.' Be-

---

**2.** 18 U.S.C. § 6002 authorizes a federal grand jury to grant use and derivative use immunity to witnesses before it and gives rise to a remedy for the witness should evidence directly or indi-

rectly derived from the immunized testimony be used by the government in a subsequent prosecution of the witness.

cause the burden is upon the government, the appellate court 'may not infer findings favorable to it on these questions.' " *Id.* at 854–55 (alteration in original) (citation omitted) (quoting *United States v. Rinaldi*, 808 F.2d 1579, 1584, 1583 (D.C.Cir.1987)).

The government concedes that by mid-November, Kuntz was indirectly exposed to the Leigh letter and that on December 17, 1987, he saw a copy of the Leigh letter for the first time. The sole issue in the present appeal, then, is whether the district court clearly erred in concluding that Kuntz did discover or inevitably would have independently discovered the evidence presented to the grand jury to indict Streck for tax evasion absent his exposure to the Leigh letter. We hold that it did not.

### III

■ Streck does not dispute that agent Kifer, who conducted the civil audit of Streck's 1983 through 1985 tax returns, was never exposed to Streck's immunized testimony. In the course of her audit, Kifer found that Streck's 1983 unreported income ultimately derived from Walsh checks, payable to third parties, that had been second endorsed to ACI. Kifer inferred, therefore, that Streck's unreported income in 1984 and 1985 also came from Walsh. Although Streck had alleged that the funds were nontaxable loans, he never responded to Kifer's request to supply documentation supporting this claim. Thus, when Kifer closed her civil audit of Streck's returns for 1983 through 1985 and referred them to agent Kuntz for criminal investigation, Kuntz needed only (1) to verify whether the unreported funds came from Walsh entities, (2) to interview the payors and payees of the second endorsed checks to see if the second endorsements were valid, and (3) to ascertain whether the unreported funds were loans from Walsh, as Streck maintained, or whether they were taxable income. Although Streck argues that Kuntz would not have discovered that the unreported funds were not loans without benefit of the Leigh letter, he offers no plausible grounds for this claim. That Kuntz had not discovered the precise source of the unreported funds when first exposed to the Leigh letter is irrelevant: Kuntz needed only to determine whether the funds were loans. Although the Leigh letter undoubtedly supported Kuntz's suspicions that they were not, there is no reason to believe that Kuntz would have been led to believe that the funds *were* loans had the Leigh letter never existed.

In addition, Streck's failure to produce documentation supporting his characterization of the funds as loans, all long before Kuntz was exposed to the Leigh letter, arguably gave the United States probable cause to believe that Streck had committed each of the elements of tax evasion: willfulness, attempt to evade, and tax deficiency. *See United States v. Curtis*, 782 F.2d 593, 595 (6th Cir.1986). As summarized by the district court on remand:

There is no evidence that Internal Revenue Service agent Kifer learned of immunized testimony given by defendant at any point during her investigation. Kifer discovered through her sole efforts that defendant had unreported income for the years 1983, 1984, and 1985; that at least some of the income had come from the Frank Walsh entities; and that the money was deposited to ACI's account.

Internal Revenue Agent Kuntz began his investigation with the spread sheet of dates and amounts of deposited items compiled by Kifer. Kuntz obtained copies of the items listed by Kifer. By examining those items and interviewing the payees, Kuntz was able to ascertain that the unreported income was not loans. Although it is undisputed that during the course of his investigation Kuntz came upon information that had been generated from the grand jury proceedings in San Francisco, he independently obtained documents and information which showed that defendant's unreported income was not loans.

J.A. at 1702–03. We agree with the district court's conclusion that Kuntz would inevitably have discovered that the disputed funds were not loans regardless of his exposure to the Leigh letter.

Streck raises a number of objections. First, he claims that the district court erroneously stated, at the pretrial *Kastigar* hearing, that documents in the public domain lose their immunity and, therefore, that Kuntz's exposure to the Leigh letter while reviewing Walsh bankruptcy documents was irrelevant. Although conceding that the court's observation was incorrect, the government correctly notes that the district court did not base its finding that the government had met its *Kastigar* burden on this conclusion. Moreover, because we find the district court's judgment proper, we would affirm the court's order even if it were based on an incorrect application of law. *See Pilarowski v. Macomb County Health Dept.*, 841 F.2d 1281, 1285 (6th Cir.), *cert. denied*, 488 U.S. 850, 109 S.Ct. 133, 102 L.Ed.2d 106 (1988).

Streck also contends that, prior to their exposure to the Leigh letter, representatives for the Walsh entities were unconcerned about Streck's diversion of funds, and points out that he remained employed for some time after Walsh's independent discovery of the diversions. Streck also notes that Walsh's representatives only became aware of the criminal nature of Streck's embezzlement *after* being exposed to the Leigh letter. Streck therefore concludes that their testimony to Kuntz during his investigation was necessarily tainted. This argument fails to recognize that the precise nature of the funds was simply inapposite to Kuntz's inquiry. Kuntz's sole responsibility was to determine whether the funds were nontaxable loans or (taxable) something else. Whether the funds were embezzled, as was ultimately found to be the case, or whether the funds were proper compensation, as Walsh representatives presumably would have testified prior to their exposure to the Leigh letter, was wholly irrelevant to whether Streck should have reported the funds as income. There are simply no grounds for believing that, prior to their exposure to the Leigh letter, Walsh representatives would have mistakenly told Kuntz that the disputed funds were loans rather than something else. Accordingly, we find it beyond dispute that Kuntz would have discovered that the funds were not loans even if the Leigh letter had never existed.

Streck's remaining objections are without merit. Although Streck chastises the district court for not having permitted greater discovery, none of the issues upon which the court based its opinion are in dispute, nor does Streck challenge the factual basis of the court's assertions.

## IV

For the foregoing reasons, we AFFIRM the judgment of the district court.