**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael BARTEL, Defendant–Appellant.**

**Nos. 93–1283, 93–1936.**

United States Court of Appeals, Sixth Circuit.

Argued March 1, 1994.

Decided March 28, 1994.

Robert Cares (argued and briefed), Joyce F. Todd, Asst. U.S. Atty., Detroit, MI, for plaintiff-appellee.

Sharon A. Payne (argued and briefed), Southfield, MI, for defendant-appellant.

Before: MERRITT, Chief Judge, and MILBURN and SILER, Circuit Judges.

MILBURN, Circuit Judge.

Defendant Michael Bartel appeals his guilty plea conviction to one count of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. Specifically, defendant challenges the district court's failure to dismiss the indictment against him on the ground that the indictment was based upon his testimony before a grand jury, for which he had been granted use immunity under 18 U.S.C. § 6002. On appeal, the issues are (1) whether the district court's denial of defendant's motion to dismiss the indictment was clearly erroneous, and (2) whether this court should adopt the per se rule of *United States v.*

*Hinton,* 543 F.2d 1002 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976), which creates a supervisory rule prohibiting a grand jury from indicting a witness who has testified before the grand jury under a grant of immunity. For the reasons that follow, we affirm and decline to adopt the per se rule of *United States v. Hinton.*

## I.

### A.

Defendant Bartel was subpoenaed to testify before a federal grand jury on October 16, 1991. The grand jury was investigating a number of persons, especially the Christunas family, for alleged violations involving the possession and distribution of marijuana. On the advice of counsel, defendant asserted his Fifth Amendment privilege against self-incrimination and refused to answer any of the grand jury's questions. Thereafter, defendant was ordered to appear before the same grand jury on December 5, 1991. Defendant Bartel's testimony before the grand jury was compelled by a grant of use immunity for the testimony under 18 U.S.C. § 6002.[1] At the outset of his grand jury testimony, defendant was advised that he was not a target of the grand jury's investigation.

During the course of his grand jury testimony, defendant Bartel admitted that he had been acquainted with Kenneth Christunas for approximately fifteen years. Defendant characterized his relationship with Ken Christunas as "just friends." J.A. 87. Defendant also testified that he was purchasing his home at 34412 McBride, Romulus, Michigan, pursuant to a land contract from Ken Christunas, who had built the home in 1980. Defendant also testified that he became acquainted with Ken Christunas through his brother, Dave Christunas, whom he had met when they worked together at Corby Construction. Defendant testified Dave Christunas was "[j]ust a friend." J.A. 90.

Defendant Bartel further testified that during the early 1980's he had no knowledge that either Dave Christunas or Ken Christunas were using or dealing in controlled substances. However, Bartel admitted that sometime in the mid–1980's, Dave Christunas told him that his brother, Ken Christunas, had been arrested in Florida and that marijuana was found in the trunk of the car which Ken Christunas was driving. Bartel also testified that in June 1990, he was aware that David Christunas had been arrested. Bartel stated that he was surprised by the arrest of Dave Christunas. According to Bartel, he stopped to eat at a deli owned by Dave Christunas, and Christunas told him that he had been arrested for hauling marijuana. Bartel testified that he subsequently learned that Dave Christunas went to jail as a result of that arrest.

Defendant Bartel also testified that he was not aware of the financial status of Ken Christunas; however, he stated that he believed Ken Christunas either owned or was a partner in several strip malls. Furthermore, defendant Bartel testified that he had never made a trip to Florida at the request of Ken Christunas and that he had never stored anything at his home for Ken Christunas. Bartel also testified that he would be surprised if someone stated that he stored marijuana at his home for Ken Christunas.

Defendant Bartel testified that within the last five years he had used marijuana once at a party. According to Bartel, the party was a block party, and he smoked a joint of marijuana with some of the persons at the party. Bartel also testified that within the last ten years, he did not obtain marijuana from anyone, had not had possession of any

---

1. 18 U.S.C. § 6002 provides in relevant part:
   Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
   (1) a court or grand jury of the United States,

   . . . . .

   and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

marijuana, and had not stored any marijuana in his house. Bartel also testified that he had never stored marijuana in his home.

Defendant Bartel also admitted that he knew an individual named Gary Sancho and another individual named Patrick Ogle. Bartel testified that Pat Ogle had been to his home on approximately two occasions and that on both occasions Ogle was accompanied by Dave Christunas.[2]

Subsequently, on April 13, 1992, the grand jury returned an indictment against twelve persons charging them with conspiracy to distribute marijuana and various other crimes. Defendant Bartel was not named in that indictment.

Michael Blackwood, a Special Agent for the Drug Enforcement Administration ("DEA"), appeared before the grand jury on July 16, 1992. Blackwood testified that three individuals had supplied information that defendant Bartel was a participant in the Christunas organization. Blackwood testified that one of these three individuals, Patrick Ogle, had grown up with the Christunas family in Marquette, Michigan, and had been involved with David Christunas in delivering and transporting marijuana. On two occasions Ogle and David Christunas went to defendant Bartel's home and picked up bales of marijuana from Bartel's garage. Blackwood testified that Ogle told him that Bartel stored marijuana for the Christunases and that whenever the Christunases needed some marijuana to distribute to their customers, they could go to Bartel's home because that

was where the Christunases kept some of their marijuana. David Christunas also told Ogle that there were more bales of marijuana stored in the rafters of defendant's home.

Blackwood also testified that information about defendant was provided by John Frederickson. Frederickson hauled marijuana for the Christunases from Florida and Texas. Frederickson told Agent Blackwood that on one occasion when Ken Christunas was driving him to the airport so that he could return to Florida, Frederickson told Christunas that he needed to borrow approximately $10,000. En route to the airport, Ken Christunas stopped at defendant Bartel's home, went into the house, and came out shortly afterward with approximately $8,000 or $9,000 which he gave to Frederickson. Agent Blackwood testified that he showed a series of photographs to Frederickson, and Frederickson picked out Bartel's home.

Agent Blackwood also testified that Carol Bowman was aware of defendant Bartel's participation with the Christunas family in the distribution of marijuana. Bowman brokered marijuana deals for the Christunas family for approximately two years, during which time she associated with David and Joseph Christunas and John Frederickson. Carol Bowman also told Agent Blackwood that she met Bartel after she had set up a marijuana deal for the Christunases in Texas. After setting up the marijuana deal, Bowman returned to Detroit for her payment, and David Christunas took her to defendant Bartel's home. There, she and Christunas met Bartel. Bartel took them

---

**2.** During defendant Bartel's grand jury testimony, the following exchange occurred between defendant and one of the grand jurors:

A JUROR: I have a question for you too. You pleaded the Fifth when you were first asked to come before us, yet you tell us now that you had nothing to hide, basically, am I correct in this?
A. Yes.
A JUROR: Do you have an attorney with you?
A. Yes.
A JUROR: An attorney you are paying for?
A. Yes.
A JUROR: And attorneys are expensive generally, the ones I know.
A. Sure are.
A JUROR: You had nothing to hide. Why are you going to the expense?

A. A lot of people tell me, anytime that you have to fool with the Federal Government, you better have an attorney. That's what I have always heard.
A JUROR: So even though you had nothing to hide, you have basically a clean record, you have an attorney outside who you're paying for.
A. Would you have one? Wouldn't you have one?
A JUROR: If I had nothing to hide? You're asking me a question? No. I would not have one.
You're not the first witness we've ever seen come in this room. Generally, the only witnesses I see with an attorney out there tend to have something to hide.
A. I don't have anything to hide.
J.A. 115–16.

into the garage where he and David Christunas weighed the marijuana and began to separate it for distribution in Bowman's presence. ·

On July 16, 1992, the grand jury issued a superseding indictment based upon Blackwood's testimony. Defendant Bartel was named as a co-conspirator in count one of the superseding indictment.

On August 20, 1992, defendant moved to dismiss the indictment on the grounds that it was improperly based upon his immunized testimony and that the evidence which the government used to indict him was derived from his immunized testimony. A hearing was held before a magistrate judge to determine whether the government could prove that the evidence to be offered at trial and the evidence upon which the indictment was based were not derived either directly or indirectly from his compelled testimony. DEA Special Agent Blackwood testified at the hearing.

Specifically, Agent Blackwood testified that he was familiar with defendant Bartel's testimony before the grand jury and that Bartel did not incriminate himself during his testimony before the grand jury. Agent Blackwood also testified that he interviewed Patrick Ogle prior to defendant Bartel's grand jury testimony and that nothing in Bartel's grand jury testimony assisted him in locating or identifying Patrick Ogle. Further, Agent Blackwood testified that he interviewed John Frederickson over a six-month period beginning prior to and ending after Bartel's grand jury testimony. Agent Blackwood stated that nothing in Bartel's grand jury testimony aided him in identifying Frederickson as part of the Christunas organization.

Agent Blackwood further testified that he interviewed Carol Bowman on June 24, 1992, more than six months after Bartel's grand jury testimony, that the name of Carol Bowman was not mentioned during the course of defendant's grand jury testimony, and that nothing in defendant's grand jury testimony assisted him in identifying or locating Carol Bowman. Finally, Agent Blackwood testified that there was nothing in defendant Bartel's grand jury testimony which gave him any investigative leads whatsoever.

Following the hearing, the magistrate judge issued a report and recommendation in which he recommended that the motion to dismiss the indictment be denied. After de novo review of the magistrate judge's report and recommendation, defendant's objections, and the grand jury transcripts, the district court concluded that "the exculpatory, non-incriminating testimony of the defendant did not contribute in any conceivable manner to his being indicted." J.A. 26. Furthermore, the district court concluded that "[t]he government has successfully met its burden under *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) by showing clearly and convincingly that the immunized testimony of defendant will not work to his detriment directly or indirectly in the sense of furnishing either direct evidence of leads from which other evidence has been obtained to assist in his prosecution." J.A. 26. Therefore, the district court denied defendant's motion to dismiss the indictment.

On February 23, 1993, defendant entered a conditional plea of guilty to count one of the superseding indictment, conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(a)(2), defendant reserved the right to appeal the district court's denial of his motion to dismiss the indictment. Defendant filed a premature interlocutory notice of appeal on February 25, 1993. On June 22, 1993, defendant was sentenced to a five-year term of imprisonment. Thereafter, defendant filed a second timely notice of appeal on July 9, 1993.

## II.

### A.

■ Defendant argues that this court should adopt the per se rule enunciated by the Second Circuit in *United States v. Hinton,* 543 F.2d 1002 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976), which requires dismissal of an indictment against a defendant who has given testimony before a grand jury under a grant of use

**1110**

immunity when the defendant is indicted by the same grand jury before which he had previously testified.

■ ·Based upon "considerations of justice and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983) (internal quotations and citations omitted). However, "it is well established that '[e]ven a sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions.'" *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988) (quoting *Thomas v. Arn,* 474 U.S. 140, 148, · 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985)).

In *Hinton,* the Second Circuit, using its supervisory power, established a per se rule requiring dismissal of an indictment where a defendant is indicted by the same grand jury before which he or she has previously given immunized testimony. The Second Circuit stated:

> We believe that as a matter of fundamental fairness, a Government practice of using the same grand jury that heard the immunized testimony of a witness to indict him after he testifies, charging him with criminal participation in the matters being studied by the grand jury, cannot be countenanced. The procedure is so fraught with applicable constitutional problems and with the potential for abuse that in our supervisory power over the administration of criminal justice in the district courts of this circuit, we are compelled to conclude that the procedure the Government adopted here falls outside the bounds of permissible prosecutorial conduct.

*Hinton,* 543 F.2d at 1010 (citations omitted). According to the Second Circuit, it adopted

its per se rule because it did not believe the Government could satisfy its burden of demonstrating a "wholly independent" source for the indictment of a defendant who has given previously immunized testimony to the same grand jury because even if the defendant substantially denied criminal involvement in the testimony before the grand jury, "that denial does not preclude the possibility of improper use against [the defendant of the defendant's] testimony. A juror can draw an inference of a witness's guilt from either a confirmation of, or a denial of participation in, acts about which he is questioned." *Id.* at 1009. Further, the Second Circuit stated that it did not believe that a *Kastigar* hearing "on the subject of taint" would be sufficient in the situation where a defendant is indicted by the same grand jury before which he testified under a grant of immunity. The Second Circuit went on to state:

> Beyond the foreseeable difficulties of establishing at a hearing that the grand jurors, when they decided to indict, did not improperly use the immunized testimony or leads or evidence derived from it, for us to condone the practice of having the same grand jury that heard the immunized testimony indict the witness who so testified is to invite action where the cure is worse than the malady. The prospect of peering into the grand jurors' minds, or of examining them individually, to ascertain whether [a defendant's] testimony was improperly used, is both impractical and unpalatable.

*Id.* at 1010.

However, in *United States v. Zielezinski,* 740 F.2d 727 (9th Cir.1984), the Ninth Circuit rejected the per se approach adopted by the Second Circuit.

> We will neither prohibit a grand jury from indicting any witness who testifies before it under a grant of immunity, nor permit prosecutors to shirk their affirmative duty to establish independent sources. [A defendant] is entitled to a hearing at which the government must establish the independent sources upon which the indictment rested.

*Id.* at 733. According to the Ninth Circuit, requiring a *Kastigar* type hearing best satis-

fies the exercise of an appellate court's supervisory power, since (1) requiring a hearing will effectively deter governmental misconduct because it provides notice that grand juries should rarely indict immunized witnesses and requires the prosecutor to establish convincingly the independent sources of his evidence, and (2) it protects the integrity of the judicial process by not allowing convictions to stand where the indictment is tainted but allows the courts to satisfactorily determine whether the prosecutors truly relied on independent sources. *Id.*

Further, in *United States v. Garrett,* 797 F.2d 656 (8th Cir.1986), the Eighth Circuit adopted the approach of the Ninth Circuit in *Zielezinski* and rejected the per se rule adopted by the Second Circuit in *Hinton,* stating:

> We agree with the Ninth Circuit that the practice of securing an indictment from the same grand jury which heard a witness's immunized testimony does not in itself constitute a violation of the fifth amendment privilege against self-incrimination. *Kastigar* held that a witness who provides immunized testimony to a grand jury can claim no violation of the fifth amendment privilege against self-incrimination unless he can demonstrate that a grand jury subsequently indicted him on the basis of evidence not wholly independent of the compelled testimony. Although *Kastigar* clearly contemplated that the indicting grand jury would be different from the grand jury which heard the testimony, there is nothing in the opinion to indicate that the scope of the self-incrimination provision or the protections of the use immunity statute would change where the compelling and indicting grand juries are one and the same. It may prove more difficult to identify a constitutional violation where only one grand jury has acted, but the inquiry remains the same.

*Id.* at 663 (citations omitted). Thus, the Eighth Circuit stated that it could not accept the "sweeping conclusion" of the Second Circuit that a *Kastigar* hearing would be insufficient in every situation where a defendant was indicted by the same grand jury before which he gave compelled testimony under a grant of immunity. *Id.* Rather, the Eighth Circuit concluded that "[r]equiring the district court to hold an evidentiary hearing at which the government, confronted by defense counsel, must affirmatively demonstrate the independent source of the evidence upon which the indictment is based, will provide the defendant with the only meaningful method and opportunity to prove a violation of his fifth amendment privilege." *Id.* at 664.

Finally, the D.C. Circuit has also rejected the per se rule of *Hinton. See United States v. North,* 910 F.2d 843, 870 (D.C.Cir.) ("Circuit law ... instructs us to allow the government an opportunity to make its case at a hearing, and therefore we decline to adopt the per se rule of *Hinton.*"), *vacated in part,* 920 F.2d 940 (D.C.Cir.1990), *cert. denied,* 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991).

Thus, except for the Second Circuit in *Hinton,* no court has adopted a broad per se rule prohibiting indictment of a defendant by the same grand jury before which he previously testified under a grant of immunity. Rather, the Eighth, Ninth, and D.C. Circuits have concluded that a *Kastigar* hearing is sufficient to protect a defendant's Fifth Amendment rights.

A similar argument was presented to and rejected by the Supreme Court in *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The Court summarized the argument this way:

> It will be difficult and perhaps impossible, the argument goes, to identify, by testimony or cross-examination, the subtle ways in which the compelled testimony may disadvantage a witness, especially in the jurisdiction granting the immunity.

*Id.* at 459, 92 S.Ct. at 1664. However, the Court rejected this argument and held that a defendant's Fifth Amendment privilege is safeguarded by placing on the prosecution the "affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 460, 92 S.Ct. at 1665.

We agree with the Eighth, Ninth, and D.C. Circuits that a *Kastigar* hearing is sufficient to protect a defendant's Fifth Amendment

privilege against self-incrimination. Accordingly, we decline to adopt the per se rule of *United States v. Hinton.*

### B.

■ Defendant also argues that the district court's decision to deny his motion for dismissal of the indictment against him was clearly erroneous. A challenge to the use of immunized testimony to secure a conviction is governed by *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). In interpreting 18 U.S.C. § 6002, the Court in *Kastigar* held that the use and derivative use immunity provided by the statute "bar[s] the use of compelled testimony as an 'investigatory lead,' and also bar[s] the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures." *Id.* at 460, 92 S.Ct. at 1664–65. Thus, once an individual shows that he testified under a grant of immunity, he "shift[s] to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Id.* at 461–62, 92 S.Ct. at 1665. This court has interpreted *Kastigar* to require that the government show that " 'its evidence against the witness is neither directly nor indirectly traceable to the [witness's] immunized testimony.' " *United States v. Streck,* 958 F.2d 141, 143 (6th Cir.1992) (quoting *United States v. Pennell,* 737 F.2d 521, 528 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985)). "In order to meet the burden of proof under *Kastigar,* the government must establish by a preponderance of the evidence that the evidence used against the defendant was obtained from a legitimate, independent source." *United States v. Overmyer,* 899 F.2d 457, 462 (6th Cir.), *cert. denied,* 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990).

■ "The standard of review of a trial court's determination as to the government's satisfaction of its burden under *Kastigar* is whether the trial court's decision is clearly erroneous." *Id.* at 463. A finding is clearly erroneous when, despite evidence to support it, a reviewing court is left with a definite and firm conviction that a mistake has been made. *Archer v. Macomb County Bank,* 853 F.2d 497, 499 (6th Cir.1988). Further, because the burden under *Kastigar* is on the government, when reviewing the district court's determination that the government has satisfied its burden under Kastigar, "the appellate court 'may not infer findings favorable to it on these questions.' " *Streck,* 958 F.2d at 145 (quoting *United States v. Rinaldi,* 808 F.2d 1579, 1583–84 (D.C.Cir.1987)).

■ As noted previously, a *Kastigar* hearing was held in this case in order to give the government the opportunity to prove that defendant Bartel's indictment was based on legitimate and independent evidence. After de novo review of the magistrate's report and recommendation, the district court concluded that the government had met its burden under *Kastigar* and that "the exculpatory, non-incriminating testimony of the defendant did not contribute in any conceivable manner to his being indicted." J.A. 26.

In this case, the district court did not err in finding that defendant Bartel's immunized testimony did not contribute directly or indirectly to the evidence used to obtain his indictment. Bartel's exculpatory testimony before the grand jury could not have contributed to the grand jury's decision to indict him. Although Bartel admitted that he had a social and/or business relationship with two of the Christunas brothers, those admissions did not taint the indictment returned by the grand jury. Further, Bartel's testimony contained no references to any individuals involved with the Christunas brothers other than Patrick Ogle. However, Agent Blackwood's testimony established that the government knew and had obtained inculpatory information about defendant Bartel from Ogle prior to Bartel's immunized testimony. Thus, Bartel's statements that he had met Ogle two or three times previously could not have provided any new or incriminating information or assisted the government in any way. Furthermore, the other two individuals who provided inculpatory evidence to Agent Blackwood concerning defendant Bartel, John Frederickson and Carol Bowman, were not mentioned during Bartel's immunized testimony before the grand jury. Thus, Bartel's immunized testimony could not have

provided any investigatory leads or new information concerning Frederickson and Bowman to the government.

Although defendant argues that his Fifth Amendment privilege against self-incrimination was violated because his compelled testimony may have been considered by the grand jurors as corroboration for the evidence presented to the grand jury by Agent Blackwood, this argument is meritless. Under the circumstances of this case, the government met its burden of proving that the evidence which it presented to the grand jury, via Agent Blackwood's testimony, was derived from legitimate sources wholly independent of defendant Bartel's compelled grand jury testimony. As the Supreme Court has noted, although it is difficult, and perhaps impossible, to identify the subtle ways in which compelled testimony disadvantages a witness, a defendant's Fifth Amendment privilege against self-incrimination is safeguarded where the government satisfies "its affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar*, 406 U.S. at 459–60, 92 S.Ct. at 1665. Here, the government more than satisfied its affirmative duty of demonstrating legitimate and wholly independent sources for the evidence upon which defendant Bartel's indictment was based. Thus, we conclude that defendant's Fifth Amendment privilege against self-incrimination was safeguarded in this case.

Defendant also places great emphasis on the exchange between himself and one of the grand jurors which is set forth above. Defendant argues that this exchange shows that his immunized grand jury testimony tainted the grand jury's decision to indict him because the grand jury was suspicious of his exculpatory testimony and was suspicious of the fact that he was represented by counsel. This argument is meritless. Although the grand jury may have been suspicious of Bartel's exculpatory testimony, the grand jury did not indict defendant Bartel until after it heard the inculpatory evidence presented by Agent Blackwood, inculpatory evidence which was developed wholly independently of defendant Bartel's exculpatory grand jury testimony.

Furthermore, contrary to defendant's argument, he is not entitled to have the indictment against him quashed merely because he was indicted by the same grand jury before which he gave immunized testimony. Defendant asserts that the indictment should have been dismissed because his credibility was attacked before the grand jury. However, Bartel's indictment is not tainted merely because his credibility was attacked before the grand jury. In *United States v. Garrett*, 797 F.2d 656 (8th Cir.1986), the defendant was granted use immunity and appeared before a grand jury investigating cocaine trafficking in northwest Arkansas. The grand jury inquired about the defendant's relationship with the two individuals who were the targets of the grand jury's investigation, and the defendant testified that both individuals were merely his friends. *Id.* at 658. According to the Eighth Circuit, "[t]he transcript of [defendant's] entire testimony before the grand jury, all of it self-exculpatory, totalled thirty-nine pages." *Id.* Later, the two targets of the grand jury investigation agreed to cooperate with the government and provided evidence of cocaine distribution, which included the defendant's participation. Based upon these new disclosures, the grand jury indicted the defendant.

Following a *Kastigar* hearing which was held on remand, the defendant's motion to dismiss the indictment was denied by the district court. The defendant appealed, arguing that the testimony elicited before the grand jury tainted the decision to indict him and also "point[ed] out that his credibility was attacked before the grand jury on more than one occasion." *United States v. Garrett*, 849 F.2d 1141, 1142 (8th Cir.1988). The Eighth Circuit determined that the district court had not committed clear error in denying the motion to dismiss the indictment:

> The record demonstrates that [defendant's] statements before the grand jury were totally exculpatory with respect to the conspiracy charge, and that the government's attacks on his credibility did not elicit any testimony implicating him in the conspiracy; for the most part, these at-

tacks merely led to further unimpeached denials by [defendant] of any knowledge or involvement in the scheme.

*Garrett,* 849 F.2d at 1142–1143.

In this case, defendant Bartel admitted only a social and/or business relationship with two of the Christunas brothers, and he admitted only that he was acquainted with Pat Ogle. Further, when one of the grand jurors attacked his credibility, defendant Bartel made a further denial of any knowledge or involvement in the marijuana distribution, stating that he did not "have anything to hide." J.A. 116.

In *United States v. Zielezinski,* 756 F.2d 1448 (9th Cir.1985) (per curiam), the defendant appeared before a federal grand jury, under a grant of immunity, which was investigating cocaine distribution by fire fighters in Phoenix, Arizona. During his testimony, the defendant admitted using cocaine in a single incident, at a bar, but denied any knowledge of cocaine use or distribution by fire fighters. *United States v. Zielezinski,* 740 F.2d 727, 728 (9th Cir.1984). Several months later, another witness testified before the grand jury and stated that he had supplied the defendant with cocaine on four other occasions; the defendant was then indicted on several counts relating to the possession and distribution.

Following a *Kastigar* hearing on remand, the district court denied the motion to dismiss the indictment. The Ninth Circuit concluded that the district court did not commit clear error and that defendant's indictment was not tainted by the grand jury's assessment of his credibility during his immunized testimony. *Zielezinski,* 756 F.2d at 1448.

In this case, defendant Bartel, like the defendant in *Zielezinski,* admitted using marijuana on a single occasion, at a party, but denied any involvement in the Christunases' marijuana distribution scheme. Accordingly, because defendant Bartel's indictment was neither tainted by his immunized testimony before the grand jury nor by the grand jury's assessment of his credibility, and because defendant's indictment resulted from inculpatory evidence which the government developed wholly independently from his exculpatory immunized testimony, the

district court's decision to deny defendant's motion to dismiss the indictment was not clearly erroneous.

## III.

For the reasons stated, the district court's judgment is AFFIRMED.

MERRITT, Chief Judge, dissenting.

I do not agree with the Court that the government has carried its heavy burden of showing that none of the 23 grand jurors who heard the defendant's compelled grand jury testimony used it in any way in returning the later indictment against him. In his compelled grand jury testimony, the defendant corroborated in many ways the government's theory of the case against him. He admitted that he knew the Christunas family well, and he also admitted that two key witnesses had seen either marijuana or large sums of money stored at the defendant's house.

The simple fact that there was other independent uncompelled testimony upon which the same grand jury could indict the defendant does not, as the Court seems to think, show that the grand jury did not also use against him the compelled testimony. Not only must the government show that there was independent testimony upon which the grand jury could have acted; it must also demonstrate that the grand jury did not use any of the compelled testimony against the defendant. The court summarily dismisses the latter requirement and fails to negate the defendant's argument that members of the grand jury would naturally have used that part of his testimony which corroborated the government's case against him. Both the Fifth Amendment and the use immunity statute assure "that the compelled testimony *can in no way lead* to the infliction of criminal penalties." *Kastigar v. United States,* 406 U.S. 441, 461, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972) (emphasis added). As the D.C. Circuit noted in *United States v. North,*

what is prohibited and unconstitutional under the Fifth Amendment and *Kastigar* is the *very presentation of the immunized testimony.* Where immunized testimony is used before a grand jury, the prohibited

act is simultaneous and coterminous with the presentation; indeed, they are one and the same. There is no independent violation that can be remedied ... [T]he grand jury process itself is violated and corrupted, and the indictment becomes indistinguishable from the constitutional and statutory transgression.

*United States v. North,* 910 F.2d 843, 869 (D.C.Cir.1990) (emphasis in original).

Because it is very difficult to show that a grand juror did not use compelled testimony, the Second Circuit established a firm presumption, if not a rule, that the same grand jury cannot indict a citizen who has previously given immunized testimony. *United States v. Hinton,* 543 F.2d 1002, 1010 (2nd Cir.1976). *Hinton* specifically noted that a "juror can draw an inference of a witness's guilt from either a confirmation of, or a denial of participation in, acts about which he is questioned." *Id.* at 1009. Moreover, if the witness "had kept silent, or had been permitted to assert his Fifth Amendment privilege, those negative inferences would have been precluded." *Id.* The justification for the *North* and *Hinton* principles is clear. By presenting incriminating evidence to the same grand jurors who previously heard defendant's compelled corroborative testimony, the defendant's right not to incriminate himself is presumptively violated.

Because our court's "independent evidence" rule violates the holdings in *North* and *Hinton* with which I agree, and implicitly violates the *Kastigar* rule "that compelled testimony can in no way lead" to punishment, I respectfully dissent.