**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Jaime CERVANTES–ARREDONDO, Defendant–Appellee.**

**No. 00SA102.**

Supreme Court of Colorado, En Banc.

Jan. 16, 2001.

---

F. Michael Goodbee, District Attorney, Fifth Judicial District, John C. Clune, Deputy District Attorney, Eagle, CO, Attorneys for Plaintiff–Appellant.

Heckman & O'Connor, P.C. Terrence P. O'Connor, Edwards, CO, Attorneys for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

The People bring an interlocutory appeal under C.A.R. 4.1 to contest the trial court's suppression of evidence seized following an investigatory stop of the defendant's car. The trial court first found that the initial traffic stop was supported by reasonable suspicion that a cracked windshield and two objects attached to the windshield obstructed the defendant driver's view. The trial court then reasoned that the purpose of the initial investigatory stop was completed when the officer handed a traffic citation to the defendant. However, the trial court concluded that any further detention of the defendant was an arrest that must be supported by probable cause to believe the defendant had committed a criminal offense.

We hold that the trial court erroneously characterized the initial period of extended contact between the defendant and the officer as an arrest requiring probable cause. In so doing, the trial court did not consider whether the continuing contact might have been a consensual encounter or an investigatory stop for another purpose before it escalated into an arrest. The record demon-

strates that the continuing contact did not immediately become an arrest. However, ambiguity in the record and the lack of factual findings make it unclear whether the continuing contact was merely a consensual encounter or whether it was an investigatory stop. Therefore, we reverse the trial court's order suppressing the evidence seized during the search of the defendant's vehicle, but we remand this case to the trial court for additional findings and conclusions.

## I.

While patrolling on October 31, 1999, Colorado State Patrol Officer Kevin Crider (Crider) observed a car with a cracked windshield and two objects that appeared to obstruct the driver's vision. Crider stopped the car and contacted the driver, later identified as Jaime Cervantes–Arredondo (Cervantes). Crider explained to Cervantes that he had been stopped for an obstructed windshield and requested his driver's license, registration and proof of insurance. Cervantes provided Crider with his license and registration, but informed the officer that he lacked proof of insurance. Crider also observed that Cervantes wore no seatbelt. The officer informed Cervantes that he would be issuing a ticket for no proof of insurance and for not wearing a seatbelt, as well as giving him a warning for the cracked windshield.

During his initial contact with Cervantes, the officer noticed two air fresheners and spray cans of engine degreaser among the trash strewn on the rear floor of Cervantes's car. At trial, Crider testified that engine degreaser has a very strong odor which he noticed immediately. He thought the air freshener and engine degreaser might be "masking agents" used to disguise the odor of drugs. Crider checked Cervantes's license and registration, and wrote a ticket for no proof of insurance and failure to wear a seatbelt.

After issuing the ticket, but without indicating that the defendant was free to go, Crider began asking Cervantes about his travel plans and the kind of work he did in Washington. Cervantes told the officer that he was coming from Seattle and going to Denver. Crider asked the defendant his reasons for traveling to Denver. Cervantes answered that he was going to see a friend. The officer asked for the name of the friend, which Cervantes provided, and Crider made a written notation of the friend's name. Crider had already called for a back-up officer because he wanted to conduct a search if at all possible.

According to his testimony, the officer next asked Cervantes if he knew the friend's address. Unable to recall a specific address, Cervantes provided Crider with the cross-streets of Sheridan and Alameda. Cervantes testified that he told Crider, "Well, I don't know this area, and that is why I just have a phone number." The officer then asked Cervantes for the friend's phone number and Cervantes gave it to him. Cervantes testified that Crider told him, "I'm going to call [the friend] and see if it's true that you're going there to visit." Cervantes testified that he responded, "Well, call him. I'm going to visit."

Crider asked whether Cervantes was carrying any concealed weapons and whether Cervantes was carrying any large amounts of money. Cervantes said he was not carrying large sums of money. At some point, Crider asked Cervantes if he had anything illegal in the car. Cervantes denied carrying anything illegal. Crider testified that he typically asks about specific drugs on any interdiction stop when he has a suspicion. Accordingly, Crider next asked Cervantes if he was carrying any cocaine. Crider testified that Cervantes paused for three to five seconds before answering "no." The officer then asked the defendant if he was carrying any marijuana or methamphetamines. Cervantes looked directly at the officer and answered "no." Although Cervantes had answered most questions without hesitation, Officer Crider testified that Cervantes's responses and his slight hesitation before answering the question about cocaine raised the officer's suspicions.

Cervantes testified that he felt humiliated after Crider issued the ticket and made statements like, "You're taking drugs to your friends in Denver," and "Where do you have

it?" Cervantes responded that he did not "think it would be right" to take drugs to Denver, that he did not have anything illegal, and that he asked the officer, "Why would I have firearms or cash or drugs?"

It is unclear when Crider returned the driver's license and registration to Cervantes. The trial court did not make any finding of fact about the items, and the record contains only one reference to the return of Cervantes's license and registration. During cross-examination, Crider stated that Cervantes was "just putting his license and registration card away" when the officer asked Cervantes about having anything illegal in the car.

Crider asked if he could search the car to verify that Cervantes was telling the truth and, according to Crider, Cervantes assented. Crider then conducted a pat-down search of Cervantes and a search of the vehicle, which revealed nothing. Nevertheless, Crider wanted a drug-sniffing dog to search the vehicle. He told Cervantes that it would take approximately an hour to have a drug-sniffing dog brought from Glenwood Springs. Cervantes stated that he made any alleged consent to the search only in deference to Crider's authority as a law enforcement officer. The officer did not complete a written consent to search form, testifying that he was out of the appropriate forms and that he forgot to ask the other officers on the scene for a copy of the form.

While waiting approximately forty-five minutes to an hour for the dog to arrive, Cervantes returned to his truck where he appeared to doze. No further questioning or interaction between Crider and Cervantes occurred during this time. After the dog arrived and Cervantes's car was searched, illegal drugs were discovered. As a result, the officer arrested and charged Cervantes as a special offender for the possession of a schedule two controlled substance with the intent to distribute. *See* §§ 18–18–405(2)(a)(I) and 18–18–407(1)(d), 6 C.R.S. (2000).

Before proceeding to trial on these charges, Cervantes filed a motion to suppress the drugs seized during the search of his car. He argued that no reasonable suspicion existed for the initial stop and that once Crider determined that there was no obstruction of the windshield, no basis existed for a further stop, for continued questioning, or for a search. Furthermore, Cervantes alleged that the stop was an illegal "profile search," that there was no valid consent to search, and that the length of the search was unreasonable.

The trial court granted Cervantes's motion to suppress. After finding that Crider's observation of the cracked windshield and the objects attached to it provided the specific and articulable basis necessary to create reasonable suspicion for the traffic stop, the trial court found that Crider's investigation continued and became an arrest without probable cause. The trial court suppressed evidence obtained after the issuance of the traffic summons, ruling that the illegal detention tainted any consent to search that Cervantes may have given. The trial court also concluded that "there may be other questions relating to the voluntariness of the defendant's consent" but it did not reach these questions and, thus, it did not determine whether Cervantes consented to the searches. The People filed this interlocutory appeal to challenge the suppression of the evidence discovered during the search of Cervantes's car.

## II.

In this opinion, we consider the standards used to determine the nature of the extended contact between Crider and Cervantes which followed this traffic stop. We discuss why the interaction between Crider and Cervantes that immediately followed the traffic stop was not, initially, an arrest that required probable cause. We discuss the factors to be considered in determining whether the continuing interaction, which occurred after the traffic stop had been concluded, was a consensual encounter. We also discuss the factors to be considered when deciding whether a traffic stop may be extended for a different valid purpose.[1] If Cervantes consented to

1. The People argue that the officer had probable cause to arrest Cervantes for driving without

the search of his car during a consensual encounter with Crider following a valid traffic stop, or during an extended investigatory stop with reasonable suspicion of other criminal activity, the trial court must determine whether the consent was voluntary and the evidence is admissible. The trial court may also need to consider whether the parameters of an investigatory stop for a different valid purpose were exceeded, or whether Cervantes consented to the lengthy detention that followed the alleged consent to search his car. Because we cannot decide on the record before us whether the evidence may be admitted, we remand to the trial court for further proceedings.

## A.

After determining that Crider had reasonable suspicion to justify the initial traffic stop, the trial court concluded that the officer's extended detention of Cervantes following the issuance of the traffic ticket, escalated the investigatory stop into an arrest without probable cause. Because the trial court concluded that Crider lacked probable cause for an arrest when he continued to detain Cervantes, the trial court granted the defendant's motion to suppress. We find that the trial court erred in characterizing the extended detention of Cervantes, immediately following the traffic stop, as an arrest.

■ Colorado law recognizes "three general categories of police-citizen encounters: (1) arrest, (2) investigatory stop, and (3) consensual interview." *People v. Johnson*, 865 P.2d 836, 842 (Colo.1994); *People v. Thomas*, 839 P.2d 1174, 1177 (Colo.1992). Arrests and investigatory stops implicate the protections of Article II, section 7, of the Colorado Constitution, and the Fourth Amendment of the United States Constitution, and must be justified by probable cause and reasonable suspicion, respectively. *People v. Johnson*, 865 P.2d at 842. A consensual interview does not implicate these consti-

proof of insurance. However, the People failed to raise this issue in the trial court. Moreover, once Crider concluded his initial investigation of the various traffic offenses and issued Cervantes

tutional protections and does not require such justification. *Id.*

■ A seizure is an arrest if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree associated with formal arrest. *Id.*; 3 Wayne R. Lafave, *Search and Seizure* § 5.1(a), at 9 (3d. ed.1996) (citing *United States v. Corral–Franco*, 848 F.2d 536 (5th Cir.1988)). A seizure is instead an investigatory stop if it is limited to a brief, non-intrusive detention, during a frisk for weapons or during preliminary questioning, and the level of intrusion is proportional to the reasonable articulable suspicion that the suspect is engaged in criminal activity. *Michigan v. Summers*, 452 U.S. 692, 701, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *Terry v. Ohio*, 392 U.S. 1, 15, 88 S.Ct. 1868, 20 L.Ed.2d 889; *People v. Hughes*, 767 P.2d 1201, 1203–04 (Colo.1989). In contrast, a consensual encounter, which is not a seizure, is a contact in which the voluntary cooperation of the citizen is elicited through non-coercive questioning. *People v. Trujillo*, 773 P.2d 1086, 1089 (Colo. 1989).

■ Here, the contact between Crider and Cervantes continued after Crider handed Cervantes a traffic citation, with a series of questions and responses that led to Crider's request to search the car. To review the trial court's suppression order, we must first inquire whether Cervantes was restrained to a degree associated with formal arrest during the period of time following the issuance of the traffic citation but preceding the request for consent to search the car. When the issue is posited in this manner, we believe it is apparent that the degree of restraint did not rise to the level associated with formal arrest.

During this critical period of questioning, Cervantes remained in his car while Crider stood next to the driver's side window. Crider did not remove Cervantes from the car and did not handcuff him or tell him that he was under arrest. After the valid traffic stop

a ticket, the purpose of the initial traffic stop had been accomplished. *People v. Redinger*, 906 P.2d 81, 85–86 (Colo.1995).

had concluded when Crider handed Cervantes the traffic citation, the degree of force Crider employed during the traffic stop was not increased during the questioning which immediately followed. However, it is unclear whether the degree of force Crider employed during the traffic stop decreased after the valid traffic stop had concluded because the record does not reveal precisely when Crider returned the defendant's license and registration. Nonetheless, even if Crider retained the defendant's license and registration while questioning him further, Cervantes was not restrained to a degree associated with formal arrest. Therefore, the trial court erred in basing its order suppressing evidence on the lack of probable cause to support an arrest.

### B.

In granting the motion to suppress, the trial court did not consider whether the initial traffic stop terminated and the continuing interaction between Crider and Cervantes became a mere consensual encounter. Because Cervantes could have consented to the search of his car during a consensual encounter, we discuss the factors to be considered in determining whether a valid traffic stop has terminated and a consensual encounter has commenced. We begin by reviewing the nature of a valid traffic stop and proceed to the period following such a stop.

Generally, the following factors are indicative of an initial investigatory stop: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *People v. H.J.*, 931 P.2d 1177, 1181 (Colo.1997). Traffic stops are usually investigatory stops because officers display their authority by activating the siren and overhead lights of their patrol car during a stop. When considering whether a police contact is initially an investigatory stop, we have also considered the position of the patrol car relative to the motorist's vehicle, the demeanor of the police officer, the location of the confrontation, the manner of expression used by the officer in addressing the citizen, and the content of interrogatories used or

statements made by the officer. *People v. Cascio*, 932 P.2d 1381, 1386 (1997) (citing *United States v. Kim*, 25 F.3d 1426 (9th Cir.1994)).

An officer may stop and question the driver of a motor vehicle if the officer has reasonable suspicion of criminal activity. *People v. Rodriguez*, 945 P.2d 1351, 1359 (Colo.1997). The officer may detain the driver long enough to check his driver's license and vehicle registration and to issue a citation. *Id.* The stop usually must "last no longer than is necessary to effectuate the purpose of the stop," and the "scope of the detention must be carefully tailored to its underlying justification." *People v. Ingram*, 984 P.2d 597, 603–04 (Colo.1999); *see also Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *People v. Rodriguez*, 945 P.2d at 1362–63; *People v. Redinger*, 906 P.2d at 85. Once the purpose of the investigatory stop is accomplished and no further reasonable suspicion exists to support further investigation, the officer generally may not further detain the driver or passengers of the vehicle. *People v. Redinger*, 906 P.2d at 85.

However, further questioning is permissible if the initial detention becomes a consensual encounter. *See People v. Thomas*, 839 P.2d at 1177–78; *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998); *United States v. Gonzalez–Lerma*, 14 F.3d 1479, 1483 (10th Cir.1994). The transition between a detention and a consensual exchange can be seamless. *State v. Robinette*, 73 Ohio St.3d 650, 653 N.E.2d 695, 698 (1995). Most citizens would not recognize the transition and would not feel free to terminate the encounter absent a clear endpoint to the investigative detention. *United States v. McSwain*, 29 F.3d 558, 562 (10th Cir.1994). Therefore, there is a danger that citizens may be coerced into answering questions that they are not required to answer, or into allowing the search of a vehicle that they are not legally obligated to allow. *Id.*

Thus, a traffic stop followed by a request for consent to search is not made up of two separable contacts, but one interaction in distinct phases. *Id.* They are part of the

same continuous contact, which begins with a routine traffic stop. *United States v. Griggs,* 114 F.Supp.2d 334, 345 (M.D.Pa.2000). Accordingly, an extended contact must be reviewed by considering the facts and circumstances that gave rise to the initial stop plus any additional information learned by the officer before issuing a warning or citation. *Id.* The duration and conditions of the contact must be viewed in the context of the entire stop. *Id.*

In determining whether a contact which begins as a traffic stop has become a consensual encounter, the Tenth Circuit has consistently applied a bright-line rule: an officer must return a driver's documentation before a detention can end and a consensual encounter can begin. *United States v. Mendez,* 118 F.3d 1426, 1429 (10th Cir.1997). Thus, where an officer retains the driver's license and registration, the driver is not free to leave and any questions asked are not part of a consensual encounter. *United States v. Gonzalez–Lerma,* 14 F.3d at 1483. Although an officer must return a driver's documentation before a detention can end, the return of the driver's documentation is not always sufficient to demonstrate that an encounter has become consensual. *United States v. Elliott,* 107 F.3d 810, 814 (10th Cir.1997). Once an officer has returned the driver's license and registration, questioning about drugs and weapons, or a request for voluntary consent to search, may become "an ordinary consensual encounter between a private citizen and a law enforcement official." *United States v. Werking,* 915 F.2d 1404, 1408 (10th Cir.1990). However, the return of the driver's documents will not end a detention if the driver "has an objective reason to believe that he was not free to end his conversation with the law enforcement officer and proceed on his way." *Id.*

Here, our review is hindered by the state of the record regarding precisely when Crider returned the driver's license and registration to Cervantes. The record supports the conclusion that the license and registration were returned to Cervantes; Crider testified that Cervantes was just putting his license and registration away when the officer asked the defendant if he had anything

illegal in the car. However, the record does not indicate at what point during the questioning Crider handed the documents to Cervantes. Because this police contact could not have become a consensual encounter while Crider still had the license and registration belonging to Cervantes, our analysis cannot be completed.

Additionally, we are reluctant to make conclusions from the record about the nature of Crider's questioning of Cervantes. Although we have adequate information about the content of the questioning, the evidence is contradictory about the tone of the questioning and the demeanor of the officer. Moreover, the trial court specifically indicated that "there may be other questions" that it did not reach because it did not review whether Cervantes consented to the searches. Although the trial court was referring to questions about whether the alleged consent given by Cervantes was voluntary, the issue of consent and the nature of the interrogation are overlapping issues.

Accordingly, we leave it for the trial court to determine when Crider returned the documents to Cervantes and to make findings concerning the nature of the interrogation. After considering these and all other relevant factors, the trial court should decide whether the valid traffic stop became a consensual encounter.

## C.

If the continuing contact between Crider and Cervantes was not a consensual encounter, the trial court must then consider whether Crider had a reasonable and articulable suspicion of criminal activity to justify a subsequent investigatory detention for another purpose. *See United States v. Werking,* 915 F.2d at 1408. Crider appears to have largely relied upon the presence of air freshener and spray cans of engine degreaser in the back of Cervantes's car in making his decision to extend his contact with Cervantes. Therefore, the trial court must consider whether the presence of air freshener and engine degreaser in the back of Cervantes's car, together with all other circumstances, created sufficient reasonable suspicion of other

criminal activity for the continued detention of Cervantes.

■ Because we have not yet addressed the level of suspicion associated with scent-masking agents sufficient to equal reasonable and articulable suspicion for further detention, we do so now to assist the trial court with the decision it may face on remand. "[T]he scent of a masking agent alone is insufficient to establish reasonable suspicion." *United States v. Villa–Chaparro,* 115 F.3d 797, 801 (10th Cir.1997). However, the presence of a scent-masking agent, coupled with other indicia of criminal activity, can support a reasonably brief inquiry. *Id.* at 802.

In *United States v. Villa–Chaparro,* a police officer noticed the odor of detergent and soap crystals scattered on the floorboard of a truck driven by the defendant whom he had stopped for failure to wear a seatbelt. *See id.* There was no detergent box, laundry basket, or clothes in the truck. Because Villa Chaparro did not own the truck, and because of inconsistencies with the registration, the officer looked for the vehicle identification number (VIN) in various locations, including the engine, to compare it to the registration. While retrieving a rag to wipe off the engine and locate the VIN, the officer observed that the rear frame and fender bowed out slightly. When the officer tapped on the fender, the fender sounded as though there were something behind it. The Tenth Circuit found the officer reasonably detained Villa Chaparro because the numerous factors relied upon by the officer created sufficient reasonable suspicion to support the defendant's detention. *Id.* at 802–03.

In contrast, in *United States v. Salzano,* an officer stopped Salzano for straying onto the shoulder of the road. *United States v. Salzano,* 149 F.3d 1238 (10th Cir.1998). Salzano produced a valid driver's license and invited the officer into the motor home he had been driving while he searched for the rental agreement. Upon entering the motor home, the officer smelled evergreen which he attributed to a natural wreath. The officer asked Salzano about his travel plans. After returning Salzano's paperwork, the officer requested consent to search, which Salzano refused. The Tenth Circuit reversed the trial court's denial of Salzano's motion to suppress. *See id.* The Tenth Circuit held that the factors relied upon by the officer, both individually and under the totality of the circumstances, did not create reasonable suspicion of criminal activity. *Id.* at 1245. Specifically, the presence of the wreath's odor in the motor home a few days before Christmas was not significant. *Id.* Without additional suspicious circumstances, the presence of a wreath in a vehicle a few days before Christmas is exactly the sort of fact that must be disregarded as so innocent or susceptible to varying interpretations as to be innocuous. *Id.* at 1244.

■ These cases illustrate the contextual nature of potential scent-masking agents. Officers must look not only to the presence of a potential masking agent, but also to the overall situation and the potential innocent uses of such agents. The presence of known masking-agents in unusual locations may give rise to reasonable suspicion of criminal activity. For example, the strong odor of perfume in the back of a vehicle might be regarded differently from the same odor in the passenger compartment. Similarly, the presence of laundry detergent, a laundry basket, and clothes in the back seat of a car does not provide reasonable suspicion of criminal activity, although the presence of detergent, without evidence of a laundry basket or clothes, might be viewed differently. *See United States v. Villa–Chaparro,* 115 F.3d at 801. Therefore, a potential masking-agent must be analyzed in context, considering the nature of the agent, its potential uses, and whether, in light of its nature and use, the location in which it is found is unusual.

The basis for the extended detention of Cervantes that preceded Crider's request for consent to search was the presence of air freshener and spray cans of engine degreaser in the defendant's car, and the slight pause before Cervantes responded to one of Crider's questions. Therefore, 'if the trial court does not find this contact to be a consensual encounter, it must consider whether these circumstances created sufficient reasonable suspicion of criminal activity to justify Crider's continued detention of

Cervantes following the initial traffic stop. Depending on these determinations, it may also be necessary for the trial court to consider whether the parameters of an investigatory stop for a different valid purpose were exceeded, or whether Cervantes consented to the lengthy detention which followed the alleged consent to search his car.

### III.

In suppressing the evidence obtained from the search, the trial court did not consider whether the extended interaction between Crider and Cervantes was a consensual encounter or whether it was an investigatory stop for another purpose. Instead, it suppressed the evidence on the grounds that the officer lacked probable cause of criminal activity to extend the detention of the defendant. Thus, we reverse the trial court's order and remand this case to the trial court for a determination of whether the extended contact was a consensual encounter or, if not a consensual encounter, whether it was supported by reasonable suspicion. If the trial court finds that the contact was a consensual encounter or that it was supported by reasonable suspicion of criminal activity, it must then resolve the motion to suppress on the basis of the remaining issues. Accordingly, we reverse the order of the trial court and remand this case for further proceedings consistent with this opinion.