The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Isias Trujillo CASTAÑEDA,
Defendant–Appellee.

No. 08SA55.

Supreme Court of Colorado,
En Banc.

June 30, 2008.

Bill Thiebaut, District Attorney, 10th Judicial District, Richard W. Dickerson, Deputy District Attorney, Pueblo, Colorado, Attorneys for Plaintiff–Appellant.

Michael L. Garcia, Pueblo, Colorado, Eduardo N. Lerma, Sr., El Paso, Texas, Attorneys for Defendant–Appellee.

Justice EID delivered the Opinion of the Court.

In this interlocutory appeal pursuant to C.A.R. 4.1, we review an order from the Pueblo County District Court granting Defendant–Appellee Isias Castañeda's motion to suppress evidence discovered during a search of his vehicle on the ground that it was the fruit of an unconstitutional seizure. We hold that the evidence should not be suppressed because it resulted from a consensual encounter between Castañeda and law enforcement officers. We therefore reverse the trial court's order.

## I.

On October 14, 2006, Colorado State Patrol Trooper Tom Taylor stopped an SUV when he noticed that the SUV's front windshield was severely cracked. Taylor obtained a driver's license, registration, and proof of insurance from the driver, Isias Castañeda. Castañeda knew little English, and Taylor knew little Spanish. However, a second trooper, who was fluent in Spanish, arrived on the scene and was able to act as an interpreter.

With the help of the interpreter and another trooper, Taylor performed an initial investigation. Castañeda presented a business card from S & S Motors in El Paso, Texas, and he said he was traveling to Denver to meet a friend named "Martin," to buy cars at an auction, and to tow the cars back to El Paso. However, Castañeda did not know Martin's last name, and the SUV did not have any tow bars. A radio dispatch check revealed that Castañeda had a prior arrest for drug trafficking but that there were no outstanding warrants for his arrest. Thus, Taylor wrote a warning ticket for the cracked windshield, returned Castañeda's documents, and told him that he was free to leave.

Castañeda turned away from Taylor and began walking toward his SUV. At that point, Taylor requested permission to ask Castañeda a few more questions. Castañeda agreed, and Taylor asked whether Castañeda had any weapons or narcotics in the SUV. Castañeda said no, and Taylor subsequently requested and received Castañeda's verbal and written consent to search the vehicle. In particular, Castañeda read and signed a consent form, and the interpreter explained to Castañeda that his consent would allow the troopers to search the SUV for weapons and narcotics.

The search revealed packages of marijuana concealed in the SUV's spare tire. Castañeda was arrested and charged with one count of possession of marijuana with intent to distribute. He filed a motion to suppress the evidence, which the trial court granted. The court held that Castañeda's consent to the search was not valid because it was the fruit of an illegal detention. First, the court found that Castañeda was in fact detained because "no reasonable person under these circumstances would have felt free to leave once Officer Taylor recontacted the defendant and asked if he could talk to him for a few moments more, especially when not advised that he didn't have ... to consent to the continued encounter." Further, the court found that the detention was not supported by reasonable suspicion. The court concluded "that the defendant's consent to search his vehicle was [therefore] the fruit of an unconstitutional seizure." The court also concluded that "[w]hile ... there is nothing in the record to suggest any coercive or intimidating tactics on the part of the officer," the taint of the illegal detention had not been purged.

The People filed this interlocutory appeal, challenging the trial court's order.

## II.

The issue is whether the trial court erred by granting Castañeda's motion to suppress. We hold that it did.

■ Due to his personal observation of the cracked windshield, Taylor had reasonable articulable suspicion to conduct an investigatory stop of Castañeda's SUV. *See People v. Cervantes–Arredondo,* 17 P.3d 141, 146 (Colo. 2001) (stating that an investigatory stop must be justified by reasonable suspicion). In fact, Castañeda does not dispute the propriety of the stop or the initial investigation. Instead, he argues that Taylor's continued

detention of him and Taylor's request for consent to search the SUV was illegal because it was not supported by reasonable suspicion.

 "Once the purpose of the investigatory stop is accomplished and no further reasonable suspicion exists to support further investigation, [a police] officer generally may not further detain the driver or passengers of the vehicle." *Cervantes–Arredondo,* 17 P.3d at 147. The exception is that "further questioning is permissible if the initial detention becomes a consensual encounter." *Id.; see also Ohio v. Robinette,* 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (holding that a search based on consent is valid if consent is voluntary). A consensual encounter does not require probable cause or reasonable suspicion because it is not a seizure under the Fourth Amendment. *Cervantes–Arredondo,* 17 P.3d at 146; *see also Robinette,* 519 U.S. at 40, 117 S.Ct. 417. In Colorado, "an officer must return a driver's documentation before a detention can end and a consensual encounter can begin." *Cervantes–Arredondo,* 17 P.3d at 148; *cf. People v. Redinger,* 906 P.2d 81, 82 (Colo.1995) (affirming suppression order where officer failed to return driver's documents). "Once an officer has returned the driver's license and registration, questioning about drugs and weapons, or a request for voluntary consent to search, may become an ordinary consensual encounter...." *Cervantes–Arredondo,* 17 P.3d at 148 (citation and quotation omitted). However, the encounter will not be deemed consensual "if the driver has an objective reason to believe that he was not free to end his conversation with the law enforcement officer and proceed on his way." *Id.* (citation and quotation omitted).

In the case at bar, Taylor returned Castañeda's documentation before asking Castañeda whether he was carrying any drugs or weapons and before requesting consent to search Castañeda's vehicle. Thus, the next inquiry is whether Castañeda had "an objective reason to believe that he was not free to end his conversation with [Taylor] and proceed on his way." *See id.*

The trial court concluded that "no reasonable person under these circumstances would have felt free to leave once Officer Taylor recontacted the defendant and asked if he could talk to him for a few moments more, especially when not advised of his right to refuse such consent." Applying de novo review, we disagree with the court's conclusion. *See People v. Matheny,* 46 P.3d 453, 462 (Colo.2002) (explaining that, where constitutional rights are concerned, the trial court's application of the law is subject to de novo review).

 After returning Castañeda's documentation, Taylor told him that he was free to leave. Castañeda then turned away from Taylor and began walking back to the SUV, which suggests that, at least at this point, a reasonable person in Castañeda's position would have understood that he was free to leave. Taylor's decision to pose a few additional questions did not change this fact. First, Taylor requested Castañeda's permission to ask those questions. *See, e.g., People v. Melton,* 910 P.2d 672, 677 (Colo.1996) (finding encounter to be consensual where officers "asked rather than demanded [the defendant's] name and address"). Second, the questions were brief and limited in scope: whether Castañeda had illegal weapons or drugs in the vehicle, and whether he would consent to a search of the vehicle. *See I.N.S. v. Delgado,* 466 U.S. 210, 219–20, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (citing the brief and limited nature of questioning in support of a finding of a consensual encounter); *Melton,* 910 P.2d at 677 (same). The limited nature of the questions was confirmed when Castañeda was informed, before he signed the consent form, that his consent would allow the troopers to search his vehicle for narcotics and weapons. Taylor did not return to the subject of the earlier questioning—that is, Castañeda's destination and purpose for the trip. *Cf. Redinger,* 906 P.2d at 82 (concluding that an encounter was not consensual where a police officer retained a driver's license and registration and continued his initial investigation after he no longer had reasonable suspicion to support the initial stop). Finally, as the trial court found, no show of force or other coercive tactics were employed. *See Melton,* 910 P.2d at 677 (noting that "[t]he officers approached [the

defendant] in a non-threatening manner without their guns drawn"). We conclude that under these circumstances, there was no objective reason for Castañeda to believe he was not free to leave. Consequently, we find that the investigatory stop had turned into a consensual encounter by the time that Taylor asked Castañeda for consent to search his vehicle.

■ The trial court came to a different conclusion based on the fact that Castañeda was not told specifically that he did not have to consent to the additional questioning or the search of his vehicle. However, the fact that a defendant is not told that he may refuse to consent does not transform a consensual encounter into an investigatory stop. *See Robinette*, 519 U.S. at 39–40, 117 S.Ct. 417 (affirming the rule that consent may be valid even if a defendant does not know he may refuse to consent); *People v. Helm*, 633 P.2d 1071, 1077 (Colo.1981) ("Knowledge of the right to refuse consent is not a prerequisite to a valid consent...."). Moreover, although the trial court was correct to take note of the fact that the troopers did not use force or other coercive tactics, it did not consider any of the other factors discussed above. *See Helm*, 633 P.2d at 1077 ("Knowl-edge of the right to refuse consent is ... one of many factors to be considered by the trial court.").

In light of these circumstances, we hold that the investigatory stop of Castañeda had turned into a consensual encounter by the time Taylor asked for permission to search his vehicle. Consequently, reasonable suspicion was not required, and Castañeda's consent was not the fruit of an unconstitutional seizure. We therefore hold that the trial court erred by granting Castañeda's motion to suppress.

### III.

We reverse the trial court's order granting Castañeda's motion to suppress evidence, and we remand this case to the trial court for further proceedings consistent with this opinion.