The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Stanley Leonard **STEVENSON,** Defendant–Appellant.

No. 06CA1612.

Colorado Court of Appeals, Div. II.

Feb. 19, 2009.

Rehearing Denied March 19, 2009.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Samler & Whitson, P.C., Eric A. Samler, Hollis Whitson, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CONNELLY.

Defendant, Stanley Leonard Stevenson, was convicted by a jury and sentenced to twenty-four years in the Department of Corrections for first degree burglary and aggravated robbery. The most significant appellate issue stems from the People's decision to grant defendant use-and-derivative-use immunity to compel his testimony at a codefendant's trial. By granting defendant such immunity before his own prosecution, the People undertook a heavy burden of proving affirmatively that the trial evidence derived from sources wholly independent of the immunized testimony. The trial court did not find, and on this record could not properly have found, that the People carried this heavy burden. Accordingly, while we reject defendant's remaining challenges, we remand for hearings and findings on defendant's immunity claim.

## I. General Background

Defendant and a codefendant (who was tried first and convicted based in part on defendant's immunized testimony) broke into the victim's apartment. Officers responding to a neighbor's report of hearing screams from the apartment arrested defendant inside. The codefendant escaped, as did a female and a male confederate who had been waiting in a car outside.

The victim could not identify either man who broke into his apartment. Other evidence proved defendant was one of the men: (1) deputy sheriffs arrested defendant inside the apartment with a box-cutter and knife in his pockets; (2) the female confederate testified defendant and the codefendant had entered the apartment; and (3) defendant's post-arrest statements, including a videotaped statement, admitted some details of the events.

The defense conceded defendant was inside the apartment but claimed he went there to collect a debt. It maintained that the codefendant committed most of the alleged acts and that defendant lacked criminal intent for the charged crimes.

## II. The Immunity Issue

### A. Background

After the first jury was sworn, defense counsel orally moved for a mistrial and to dismiss based upon the prosecution's improper use of immunized testimony. Counsel explained to the trial judge, who had not presided over the codefendant's trial, that the People had compelled defendant's testimony under a grant of immunity. After hearing from both sides, the court granted a mistrial

and scheduled the motion to dismiss for briefing and hearing.

The prosecutor conceded that even though he was not the prosecutor in the codefendant's trial, he and an investigator had attended that trial when defendant gave immunized testimony. The prosecutor further conceded having considered that testimony in framing a plea offer to defendant. Finally, the prosecutor conceded he and others in his office had discussed using the immunized testimony for possible impeachment before concluding this would be improper.

The prosecutor nonetheless denied having any present recall of the particulars of defendant's immunized testimony. He denied having made any improper use of the testimony and argued that any use would have been harmless error. The parties subsequently stipulated that the issues could be decided without a hearing based on the facts and arguments presented in the briefs.

The court denied the motion to dismiss the case. The court noted that because neither side had provided the transcript of defendant's immunized testimony, it had "no basis to find that the District Attorney has improperly used the immunized testimony to acquire any information or evidence, either directly or indirectly."

The court added, however, that the prosecutor's claim to have no present recollection of the testimony "strains credulity." Noting that the prosecutor "has had full exposure" to the immunized testimony, the court wrote "it may be highly improbable that this prosecutor will not make some use of the compelled testimony as the trial unfolds." Accordingly, the court "strongly recommend[ed] that the case be reassigned to a prosecutor who is not, and shall not be, privy to the immunized testimony in any way."

The District Attorney's Office did not follow the court's strong recommendation. The prosecutor reported that he, his supervisor, and the District Attorney had reviewed the court's order, but did not reassign the case: "Our decision was to have me try the case, and I have been admonished concerning the care I need to take."

Immunity issues resurfaced at trial when defense counsel objected that the prosecutor was framing jury voir dire questions based on a theory of complicity and information about a knife derived from the immunized testimony. The court was not persuaded as to complicity but warned that any suggestion a specific knife was used would be improper if it derived from immunized testimony.

Defense counsel again moved to dismiss after the jury returned guilty verdicts. The court then was provided the transcript of defendant's immunized testimony for the first time. It again denied the motion, ruling that "[d]uring this entire trial, the prosecution made no reference to or improper use of the defendant's immunized testimony."

## B. Discussion

### 1. Legal Overview

■ Our federal and state constitutional privileges against compelled self-incrimination, though phrased differently, are functionally identical. *Compare* U.S. Const. amend. V (no person "shall be compelled, in any criminal case, to be a witness against himself") *with* Colo. Const. art. II, § 18 (no person "shall be compelled to testify against himself in a criminal case"). The former's reference to being a "witness" against oneself and the latter's reference to "testify[ing]" against oneself mean the same thing. *See United States v. Hubbell*, 530 U.S. 27, 34, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000) ("The word 'witness' in the constitutional text limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character.").

Likewise, the federal and Colorado immunity statutes are functionally identical. Both formerly granted full "transactional" immunity to individuals compelled by court order to testify on matters that might incriminate them. Will Hood, *Witness Immunity Under Colorado Law*, 27 Colo. Law. 37 (Dec.1998). The federal statute, as amended in 1970 and upheld in *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), provides "use-and-derivative use" immunity for compelled testimony. 18 U.S.C. § 6002. Colorado's immunity statute, as first amend-

ed in 1983 and modeled on the federal statute, provides the same protection. § 13–90–118(1), C.R.S.2008; *see People v. Reali*, 895 P.2d 161, 165 (Colo.App.1994) *(Reali I)* (Colorado immunity statute "contains essentially the same provisions as those considered in *Kastigar*"), *denial of post-conviction relief aff'd*, 950 P.2d 645 (Colo.App.1997) *(Reali II)*.

*Kastigar*, the leading case on immunity issues, held that a defendant "need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." 406 U.S. at 461–62, 92 S.Ct. 1653. This burden, moreover, "is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 460, 92 S.Ct. 1653.

Later Supreme Court decisions continue to emphasize the "heavy burden" imposed on the government when it seeks to prosecute a previously immunized defendant. *See, e.g., Braswell v. United States*, 487 U.S. 99, 117, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) (grant of immunity "can have serious consequences," because "[e]ven in cases where the Government does not employ the immunized testimony for any purpose—direct or derivative—against the witness, the Government's inability to meet the 'heavy burden' it bears may result in the preclusion of crucial evidence that was obtained legitimately"). Most recently, in *Hubbell*, the Court dismissed an indictment and reiterated the "affirmative duty on the prosecution, not merely to show that its evidence is not tainted by the prior testimony, but 'to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.'" 530 U.S. at 40, 120 S.Ct. 2037 (quoting *Kastigar*, 406 U.S. at 460, 92 S.Ct. 1653).

Colorado cases likewise construe immunity protections broadly. In *People v. Casselman*, 196 Colo. 304, 583 P.2d 933 (1978), the district attorney charged a defendant with theft of wheat some six months after attending a bankruptcy hearing in which the defendant had testified subject to immunity protections. The supreme court, "deem[ing] it highly improbable that the prosecution did not make some use of the testimony," affirmed dismissal of the charges because the district attorney had made "a prima facie use of the defendant's immunized testimony" by attending the hearing, and "the prosecution had not met its heavy burden of affirmatively establishing that the evidence it used as a basis for the charges was derived solely from independent sources." *Id.* at 307, 583 P.2d at 935–36. *Casselman* approvingly quoted an Eighth Circuit case that broadly described the possibly improper uses of immunized testimony to " 'include assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning [trial] strategy.' " *Id.* at 307, 583 P.2d at 935 (quoting *United States v. McDaniel*, 482 F.2d 305, 311 (8th Cir.1973)).

The division in *Reali I* noted that *Casselman* "appears to have adopted" the Eighth Circuit's broad view that *Kastigar* proscribes even non-evidentiary uses of immunized testimony. 895 P.2d at 166–67. The division held this apparent proscription of non-evidentiary use was not dispositive for two reasons: first, because there was a "demonstrable use" of the testimony in preparing the charges in *Casselman*; and "[s]econd, and perhaps more significant, defendant here made a detailed, non-immunized statement describing her part in the killing before giving any immunized testimony." *Id.* at 167. It concluded that any improper use of the testimony was harmless beyond a reasonable doubt. *Id.*

The division in *Reali II* rejected collateral challenges to the sufficiency of the hearing and fact-finding proceedings. It concluded the trial court had conducted the "functional equivalent" of a *Kastigar* hearing: a "lengthy evidentiary hearing" on a motion to dismiss "during which several witnesses, including a deputy district attorney and the district attorney, testified." 950 P.2d at 647. It added that "[i]n ruling on the motions, the trial court correctly noted that the prosecution had the burden of proving there was an

independent legitimate source for the evidence." *Id.*

A then-prosecutor and current Supreme Court Justice wrote that *Kastigar* "in theory leaves open the possibility of prosecuting the witness, [but] in practice such prosecutions are difficult and rare." Samuel A. Alito, Jr., *Documents and the Privilege Against Self–Incrimination,* 48 U. Pitt. L.Rev. 27, 56 (1986). Justice Alito explained "one of two steps usually must be taken": (1) "the government may meticulously document the source of all of its evidence"; or (2) "the attorneys and investigators who have heard or reviewed the immunized testimony may withdraw completely from any subsequent participation." *Id.*

The burdens were illustrated in the Iran–Contra prosecutions. *United States v. Poindexter,* 951 F.2d 369 (D.C.Cir.1991); *United States v. North,* 910 F.2d 843, *modified,* 920 F.2d 940 (D.C.Cir.1990). The special prosecutor there: (1) "canned" the evidence prior to congressional immunity grants; and (2) erected a metaphorical "wall" shielding prosecutors and investigators from the testimony. *See* 3 Wayne R. LaFave et al., *Criminal Procedure* § 8.11(c), at 283–284 (3d ed.2007). Nonetheless, even these steps proved unsuccessful, and the convictions were reversed because witnesses had been exposed to the immunized testimony. *See id.*

### 2. Burden of Proof and Standard of Review

■ The adjective "heavy," as used in *Kastigar* to describe the prosecution's burden of disproving use or derivative use, "refers to the difficulty of proving a negative, not the standard of proof." *Aiken v. United States,* 956 A.2d 33, 45 n. 39 (D.C.2008). The prosecution must make the requisite showing by a preponderance of the evidence. *See, e.g., United States v. Danielson,* 325 F.3d 1054, 1074 (9th Cir.2003); *United States v. Daniels,* 281 F.3d 168, 180 (5th Cir.2002); *United States v. Nanni,* 59 F.3d 1425, 1431–32 (2d Cir.1995); *United States v. Bartel,* 19 F.3d 1105, 1112 (6th Cir.1994); *North,* 910 F.2d at 854.

■ Where a trial court "uses correct legal principles," *Kastigar* findings are reviewed under the clear error standard. *United States v. Harris,* 973 F.2d 333, 337 (4th Cir.1992). Remand is required if a trial court does not make the requisite findings using the correct *Kastigar* standard or procedures. *See, e.g., United States v. Dudden,* 65 F.3d 1461, 1469 (9th Cir.1995); *United States v. Schmidgall,* 25 F.3d 1523, 1530–31 (11th Cir.1994); *United States v. Rinaldi,* 808 F.2d 1579, 1584 (D.C.Cir.1987); *United States v. Tantalo,* 680 F.2d 903, 908 (2d Cir.1982).

### 3. Application to this Case

■ The trial court here never made an affirmative finding that the People's evidence derived entirely from sources other than the immunized testimony. The court's pretrial ruling, made without a transcript of defendant's immunized testimony, stated only that it had "no basis to find that the District Attorney has improperly used the immunized testimony to acquire any information or evidence, either directly or indirectly." But *Kastigar* places the burden on the prosecution affirmatively to disprove use and derivative use. And without knowing the particulars of the immunized testimony, the trial court could not properly have made the required finding. *See United States v. Cantu,* 185 F.3d 298, 303 (5th Cir.1999) ("a district court conducting a *Kastigar* hearing must have the defendant's immunized statements in order to decide the issue fairly") (citing *United States v. Williams,* 817 F.2d 1136, 1138 (5th Cir.1987)).

The court's post-trial ruling also was legally insufficient. It ruled that "[d]uring this entire trial, the prosecution made no reference to or improper use of the defendant's immunized testimony." Again, the court did not find, nor was there any record basis for finding, that none of the prosecution's evidence *derived* from immunized testimony. The prosecution was never subjected to the "heavy" and "affirmative" burden of proving that its trial evidence "derived from a legitimate source wholly independent of the compelled testimony." *Kastigar,* 406 U.S. at 460, 92 S.Ct. 1653.

■ There are several ways, undetectable from a trial record, in which there could be an impermissible derivative use. Here, for example, both the prosecutor and the investigator (herself a witness) met with trial witnesses in advance of their testimony. Indeed, after the codefendant's trial, the prosecutor met alone with the crime victim and later claimed the victim's ability to recall new details resulted from "improved" memory. Any communications by a prosecutor or investigator in witness preparation meetings relaying information derived from defendant's immunized testimony would be impermissible. *Poindexter*, 951 F.2d at 373 ("a prohibited 'use' occurs if a witness's recollection is refreshed by exposure to the defendant's immunized testimony, or if his testimony is in any way 'shaped, altered, or affected,' by such exposure") (citing *North*, 910 F.2d at 860–61, 863); *see also Schmidgall*, 25 F.3d at 1528 ("Prohibited indirect derivation includes using immunized testimony to help shape the questioning of another witness.").

### 4. Instructions on Remand

■ The district court on remand should begin by identifying precisely the information in defendant's immunized testimony that was not previously known to the prosecution. The People then must prove by a preponderance of the evidence that none of this information was used directly or indirectly in defendant's prosecution. That showing must be made "witness-by-witness" and "if necessary, . . . line-by-line and item-by-item." *North*, 910 F.2d at 873; *see also United States v. Ford*, 176 F.3d 376, 381 (6th Cir.1999) (approvingly quoting *North* on this point). And the People cannot carry their burden simply by negating taint but instead must demonstrate affirmatively a non-immunized source for their evidence. *See Hubbell*, 530 U.S. at 40, 120 S.Ct. 2037; *Kastigar*, 406 U.S. at 460, 92 S.Ct. 1653.

■ The district court also should require the prosecution affirmatively to demonstrate a wholly independent source for all strategic decisions, such as use of a complicity theory, challenged by defendant. In requiring such a showing, we do not now hold that *Kastigar* proscribes so-called "non-evidentiary" uses of immunized testimony. While *Casselman* could be read that broadly, courts are divided on whether *Kastigar* extends to non-evidentiary uses. *See Reali I*, 895 P.2d at 166–67 (citing cases). We cannot decide what non-evidentiary uses are prohibited without knowing what, if any, were made. Notably, the non-evidentiary use issue exists here only because the District Attorney's Office rejected the district court's strong, and very appropriate, recommendation that the case be tried by an untainted prosecutor. *See generally* 3 Wayne R. La-Fave, *supra, Criminal Procedure* § 8.11(c), at 288 ("the assignment of the prosecution to prosecutors and investigators who have no knowledge of the contents of the immunized testimony is deemed advisable even by courts taking a narrower view of what *Kastigar* prohibits") (citing cases).

The district court must make precise findings on the extent to which the prosecution has or has not carried its burden of disproving impermissible use of the immunized testimony. Only then should it consider whether any such use was harmless beyond a reasonable doubt. *Cf. United States v. Ponds*, 454 F.3d 313, 328–29 (D.C.Cir.2006) (referring to need for "precise" findings, and "remand[ing] the case to the district court to consider the degree of the government's impermissible use and to determine whether that use was harmless beyond a reasonable doubt").

### III. Remaining Issues
### A. Double Jeopardy and Speedy Trial

Defendant raises constitutional double jeopardy and statutory speedy trial challenges resting on the same premise: that the court did not need to grant the defense-requested mistrial but instead could have resolved the *Kastigar* issues without discharging the jury. We review these issues of constitutional and statutory law de novo. *See People v. Castaneda*, 187 P.3d 107, 109 (Colo.2008); *People v. Carr*, 205 P.3d 471, 473 (Colo.App.2008).

■ Defendant's double jeopardy challenge to the necessity of the mistrial fails because defendant sought the mistrial. A

defense "motion for a mistrial is generally considered to operate as a waiver" of double jeopardy protections, *People v. Espinoza*, 666 P.2d 555, 558 (Colo.1983), and at a minimum precludes any later challenge to the necessity of the mistrial. *See Oregon v. Kennedy*, 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (where "the defendant himself has elected to terminate the proceedings against him," "the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause").

■■■■ Double jeopardy does not preclude retrial in this context unless the prosecution "conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Kennedy*, 456 U.S. at 679, 102 S.Ct. 2083; *see also Espinoza*, 666 P.2d at 558–59 (following *Kennedy* and *People v. Baca*, 193 Colo. 9, 562 P.2d 411 (1977), which "held that prosecutorial misconduct did not provide a basis for a claim of double jeopardy in the absence of evidence that the prosecutor was attempting to save his case for another day by triggering a mistrial"). Defendant cannot satisfy *Kennedy* because the prosecution plainly did not intend to provoke defendant into seeking a mistrial after the jury was impaneled; instead, defense counsel concededly made a strategic choice to delay the *Kastigar* objections until that time.

■■■■ The statutory speedy trial challenge fails for a similar reason. Defendant, who consented to a trial outside the normal six-month time limits, does not and could not challenge the original trial date. *See* § 18–1–405(4), C.R.S.2008 (allowing defense waivers of statutory deadlines). The retrial, which occurred within three months of the mistrial date, complied with the speedy trial statute. *See* § 18–1–405(6)(e) (excluding "period of delay caused by any mistrial, not to exceed three months for each mistrial"), *applied in Mason v. People*, 932 P.2d 1377 (Colo.1997). Defendant's only argument against this exclusion is that "the mistrial was based on juror inconvenience, and this is not a valid reason for a mistrial." But, as with double jeopardy, defendant's mistrial motion waived any challenge to the need for the mistrial. *Cf. People v. Duncan*, 31 P.3d 874, 877–78 (Colo.2001) (analogizing to *Kennedy*, in holding that defense continuance motion waives speedy trial challenge unless prosecutorial misconduct was designed expressly to " 'goad' the defendant into waiving that right" to speedy trial).

### B.  Discovery Violations and Sanctions

■■■■ The district court sanctioned the prosecution for a conceded discovery violation by dismissing two criminal counts, including a crime of violence sentencing enhancer. Defendant argues this sanction was insufficient. Because trial courts have broad discretion in this area, "an order imposing a discovery sanction will not be disturbed on appeal unless it is manifestly arbitrary, unreasonable, or unfair." *People v. Lee*, 18 P.3d 192, 196 (Colo.2001).

The violation was the prosecutor's failure to disclose the victim's inconsistent pretrial preparation session statements. The inconsistency involved the number of times the victim had been duct-taped: he testified at the codefendant's trial to two such duct-tapings, told the prosecutor in a subsequent preparation session that he had been duct-taped more than twice, and then testified at defendant's trial that he had been duct-taped four times.

■■■■ The trial court did not abuse its discretion by dismissing two counts instead of granting a mistrial of the entire case. Discovery sanctions serve "the dual purposes of protecting the integrity of the truth-finding process and deterring discovery-related misconduct." *Id.* A trial court's paramount obligation is "to restore 'a level playing field' " so as "to advance the search for truth." *Id.* at 197. It can do so by ordering production of the withheld material and, if necessary, granting a continuance to allow its effective use. *See* Crim. P. 16(1)(III)(g). If necessary, the court may impose a deterrent sanction, but it generally "should impose 'the least severe sanction that will ensure that there is full compliance with the court's discovery orders.' " *Lee*, 18 P.3d at 197 (quoting *People v. Cobb*, 962 P.2d 944, 949 (Colo.1998)).

Defendant here does not argue that any further sanction was necessary to restore a level playing field. The prosecutor should have made prior disclosure of the victim-witness's inconsistent statements about the purported number of duct-tapings, but the delayed disclosure did not prevent defense counsel from conducting effective impeachment on this ground.

A mistrial was not necessary "to cure any prejudice resulting from the violation," *Lee*, 18 P.3d at 197, but instead was sought as a punitive sanction. Granting a mistrial solely to sanction the prosecution, however, would have spawned unnecessary delay and collateral damage to the interests of the court, witnesses, jurors, and public in resolving this case. The trial court did not abuse its discretion by concluding that dismissal of two criminal counts was a more appropriate punitive sanction.

Defendant nonetheless argues the sanction was insufficiently severe in light of the prior "pattern of prosecutorial misconduct and discovery violations." But it was this prior pattern that justified a punitive sanction at all. Standing alone, nondisclosure of inconsistencies regarding the duct-taping arguably would not have supported a punitive sanction, especially given the trial court's finding it was the product of prosecutorial "thoughtlessness." The trial court had already remedied the major prior violations by granting defendant a personal recognizance bond and ultimately precluding the prosecution from introducing DNA evidence. Defendant has not shown any abuse of discretion regarding the manner in which the trial court addressed the prosecution's discovery violations.

## C.   The Juror Question

■   Defendant argues the trial court erred in allowing a juror question under Crim. P. 24(g), asking the woman who drove with defendant and the codefendant to the victim's apartment why she did not like defendant. We disagree.

Defense counsel's cross-examination elicited this dislike of defendant. The parties stipulated during the redirect questioning of this witness that to address this point the prosecutor could introduce but not expound on a profane and threatening letter defendant had written to the witness. The juror's question was asked at the end of redirect. Defense counsel objected only that the question was precluded by the parties' stipulation and had been asked and answered. The court overruled those objections and put the juror's question to the witness. The witness answered that she and defendant did not get along very well even "before this happened," that she did not "care for anybody that was involved in this any longer," and that she also did not like defendant because he "won't tell the truth about everyone's intentions that night."

Defendant argues the stipulation should have precluded the juror's question why the witness did not like defendant. But, as the trial court recognized, this stipulation did not purport to cover juror questions. In any event, it did not bar this particular question. At most, the stipulation precluded further questioning on the contents of defendant's letter to the witness. This letter may have been one reason why the witness disliked defendant but it was not necessarily the only reason for that dislike. Accordingly, the trial court properly ruled that the juror's question was not precluded for the reasons raised at trial and renewed on appeal.

Defendant did not argue at trial and does not argue on appeal that the juror's question was substantively objectionable. Nor did defendant move to strike any part of the witness's answer explaining her dislike of defendant. We therefore do not consider possible substantive objections to the question and answer.

## D.   The Prosecutor's Closing Argument

■■   Defendant finally argues reversal is required based on remarks in the prosecutor's rebuttal closing argument. Because defendant did not raise an objection in the trial court, he must satisfy the plain error standard. *See* Crim. P. 52(b). This means he must show the remarks were "flagrantly, glaringly, or tremendously improper," *Domingo–Gomez v. People*, 125 P.3d 1043, 1053 (Colo.2005) (internal quotations omitted), and

"so undermine[d] the fundamental fairness of the trial as to cast serious doubt on the reliability of the jury's verdict." *People v. Welsh*, 176 P.3d 781, 788 (Colo.App.2007).

The prosecutor, in arguing that defendant personally had committed some of the violent acts, attacked the credibility of some of defendant's post-arrest denials. In the remarks now challenged on appeal, he added:

> [You jurors] have to consider the circumstances under which the witnesses have testified. Now you heard [defendant's] words. He didn't testify. You heard his words. They weren't under oath, as opposed to every other person that you've heard from who swore to tell you the truth.

 On the one hand, a prosecutor may not ask a jury to infer guilt from a defendant's constitutionally-protected right not to testify. *Griffin v. California*, 380 U.S. 609, 614–15, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). On the other hand, reference to a defendant's failure to testify is not necessarily unconstitutional if it does not ask the jury to infer guilt from the failure to testify but instead fairly responds to a defense contention. *See United States v. Robinson*, 485 U.S. 25, 34, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988) ("It is one thing to hold, as we did in *Griffin*, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence."); *United States v. Ivory*, 532 F.3d 1095, 1101 (10th Cir.2008) ("the prosecutor's remark referred to the failure of the Defendants to testify, but the remark's purpose was not to encourage the jury to infer guilt from silence by suggesting that a defendant who does not testify must have something to hide") (holding that *Robinson* rather than *Griffin* controlled the case).

 We need not decide whether the remarks in this case crossed the line drawn by *Griffin* and *Robinson*. Even assuming they did, the normal plain error standards apply to constitutional errors challenged for the first time on appeal. *People v. Miller*, 113

P.3d 743, 748–50 (Colo.2005). Applying those standards, we conclude any error in the remarks did not so undermine the fairness of the trial as to cast serious doubt on the jury's verdict. The evidence was strong, the remarks now challenged were a relatively small part of closing argument, and the jury was instructed it could draw no adverse inference from defendant's failure to testify.

### IV. Conclusion

The case is remanded for further proceedings consistent with this opinion. If the trial court finds after those proceedings that the prosecution has carried its affirmative *Kastigar* burdens, or that any *Kastigar* violations were harmless beyond a reasonable doubt, it shall leave the convictions intact and the judgment shall stand affirmed; otherwise, it shall vacate the convictions. Any party adversely affected by a final trial court ruling on the *Kastigar* issue may file a new notice of appeal challenging that ruling.

Judge CASEBOLT and Judge ROY concur.