**UNITED STATES of America,**
**Respondent–Plaintiff,**

v.

**Anthony C. WILLOUGHBY,**
**Petitioner–Defendant.**

**Case Nos. 3:10 CR 431, 3:15 CV 1087**

United States District Court,
N.D. Ohio, Western Division.

Signed November 18, 2015

James V. Moroney, Jr., Office of the U.S. Attorney, Cleveland, OH, for Respondent–Plaintiff.

Andrew P. Hart, Office of the Federal Public Defender, Toledo, OH, for Petitioner–Defendant.

## MEMORANDUM OPINION AND ORDER

JACK ZOUHARY, UNITED STATES DISTRICT JUDGE

### INTRODUCTION

Defendant Anthony Willoughby, a *pro se* federal prisoner, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Docs. 149 & 153). Willoughby asserts a host of errors in the underlying Indictment along with ineffec-tive assistance of both trial and appellate counsel. The Government responds (Doc. 157). This Court requested additional briefing on Willoughby's claim under *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) (*see* Docs. 162 & 163), which Willoughby raised for the first time in his Reply (Doc. 160). For the reasons below, the Motion is denied.

### BACKGROUND

A jury convicted Willoughby of sex trafficking SW, a minor, in violation of 18 U.S.C. § 1591(a)(1). The jury specifically found that Willoughby procured SW's prostitution through force, fraud, or coercion (Doc. 83 at 2), triggering a fifteen-year mandatory minimum sentence. *See* 18 U.S.C. § 1591(b)(1). This Court imposed a within-guidelines sentence of 360 months of imprisonment (Doc. 122 at 2). The Sixth Circuit affirmed Willoughby's conviction and sentence. *See United States v. Willoughby*, 742 F.3d 229 (6th Cir.2014). Willoughby then filed this Motion.

### STANDARD OF REVIEW

To obtain relief under 28 U.S.C. § 2255, Willoughby must show that his sentence "was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." Relief under Section 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

To succeed on his ineffective-assistance claims, Willoughby must show "(1) counsel's performance fell below an objective

standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, Willoughby must show "a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

### DISCUSSION

The Motion raises thirteen grounds, with the thirteenth ground including thirty-two subparts. Willoughby's claims fall into two categories: alleged defects in the Indictment and Jury Instructions (including counsel's failure to challenge them), and various allegations of ineffective assistance of counsel. In his Reply, Willoughby also raises a claim relating to the Supreme Court's recent decision in *Johnson v. United States,* —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). This Court addresses his claims in groups where the issues overlap.

### The Indictment and Jury Instructions Were Not Defective

Willoughby alleges a number of problems with the Indictment and Jury Instructions that he admits were not raised during his trial, sentencing, or direct appeal (Doc. 153 at 2, 5, 7–9, 11). While Willoughby likely waived these claims, *see Ratliff v. United States,* 999 F.2d 1023, 1025 (6th Cir.1993), this Court will address the claims because he asserts counsel was ineffective in failing to raise them.

■ *Jury Instructions, Double Jeopardy, and Jury Findings.* Three of Willoughby's claims stem from his fundamental misunderstanding of 18 U.S.C. § 1591

(Doc. 153 at 2–4, 7–9). In short, Willoughby argues Section 1591(a) and (b) define separate offenses. As a result, he alleges: (1) the Indictment and Jury Instructions did not include the requirement that the victim "had not attained the age of 14 years at the time of such offense," 18 U.S.C. § 1591(b)(1); (2) the Indictment did not protect against the risk of double jeopardy because it did not account for the two crimes alleged against him; and (3) the jury did not find facts necessary to support the conviction—namely, that SW was under fourteen.

But as the Government notes, Willoughby simply misreads the statute. Section 1591(a) establishes the essential elements for criminal liability: (1) knowingly procuring a person for prostitution; (2) knowing, or in reckless disregard of the fact that force, threats of force, fraud, or coercion will be used to cause the person to engage in commercial sex acts, or that the person is under eighteen years old; (3) in a manner affecting interstate commerce. Section 1591(b)(1) merely prescribes a higher minimum sentence for those found guilty under subsection (a) when the offense conduct includes (1) force, fraud, or coercion *or* (2) a victim under fourteen years of age. The statute defines only one crime, and does not require a victim younger than fourteen for a conviction. The Government need not prove both.

*Indictment Elements.* Similarly, Willoughby argues Section 1591(a) itself includes two distinct offenses (Doc. 153 at 5–6). He claims the Indictment incorrectly mismatched elements from these separate crimes because it stated Willoughby had committed the offense against a minor under the age of eighteen while knowing or in reckless disregard of the fact that force, fraud, or coercion would be used. Again, Willoughby misreads the statute. The jury could find Willoughby guilty under

Section 1591(a) either because he knew that force, fraud, or coercion would be used against SW or because SW was underage. And, in any event, the jury here found both (Doc. 83, Jury Verdict at 1–2). The Indictment thus included the essential elements of the crime and sufficiently alerted Willoughby of the charges against him.

■ *Constructive Amendment.* Willoughby next argues this Court amended the Indictment before trial. He notes the Indictment listed the charge as a violation of "Title 18, Sections 1591(a)(1) and (b)(1), and 2, United States Code" (Doc. 1 at 2), whereas this Court's Order denying Willoughby's request for a Bill of Particulars listed the charge as a violation of "18 U.S.C. § 1591(a)(1) and (b)(1) and (2)" (Doc. 38 at 1). According to Willoughby, the parentheses around the number two and the omission of the comma after "(b)(1)" amended the Indictment to include a charge never returned by a grand jury. As the Government notes, however, a simple typographical error (if that) occurring during a later stage of the case does not nullify the charges brought by the grand jury.

■ Nor did the Government constructively amend the Indictment during trial, as Willoughby claims, by presenting evidence that Willoughby "maintained" and "threatened" SW despite the Indictment's absence of the words "maintains" or "threats of force" (Doc. 153 at 9–11). "It is not necessary that the indictment use the precise language used in the statute, as long as the indictment, by fair implication, alleges an offense recognized by the law." *United States v. Joseph,* 781 F.2d 549, 554 (6th Cir.1986). Although the Indictment omitted the words "maintains" and "threats of force," it fairly apprised Willoughby of the charges against him.

■ *Failure to Raise Claims.* Willoughby faults counsel for failing to raise the Indictment and Jury Instruction arguments during his trial and appeal (Doc. 153 at 13–17). But "omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley,* 706 F.3d 741, 752 (6th Cir.2013). These grounds, as explained above, are meritless.

**Trial Counsel Was Not Ineffective**

In his thirteenth ground, Willoughby lists thirty-two ways in which both trial and appellate counsel allegedly deprived him of his right to effective assistance. Again, this Court addresses Willoughby's claims in groups where issues overlap.

■ First, Willoughby claims counsel failed to explore the range of penalties with him, thereby causing him to reject the Government's plea offers (Doc. 153 at 18–19). Specifically, he maintains he would have accepted a deal had counsel advised him that he qualified as a career offender. But Willoughby proved himself unwilling to accept a reasonable offer (*see* Doc. 157–2, Hartman Aff. at ¶ 4), refused to acknowledge his guilt during sentencing, and maintains his innocence even now (*see* Doc. 142 at 39; Doc. 152 at 3–4). He thus fails to show a reasonable probability he would have pled guilty absent counsel's alleged error.

Second, Willoughby argues his counsel's misunderstanding of the law hampered his defense. He quotes counsel's Motion for a Bill of Particulars, in which counsel claimed the Indictment did not provide adequate notice of the factual allegations against Willoughby (Doc. 153 at 19–20 (quoting Doc. 27 at 3)). Willoughby also cites counsel's statements at trial as proof that counsel "had no clue as to what crime [Willoughby] was being held to stand trial to" (*id.* at 20). Yet as this Court previously decided, the Indictment provided adequate notice, and the extensive discovery

given to the defense cured any alleged defects (Doc. 38 at 2–3).

■ Third, Willoughby maintains counsel failed to properly investigate and challenge SW's credibility. He first faults counsel for failing to investigate and cross-examine SW as to an earlier accusation of sexual assault that she later recanted (Doc. 153 at 21–22). But this Court specifically ruled that counsel could not introduce evidence of the earlier recantation at trial (Doc. 76 at 1). Though the Sixth Circuit later found this ruling in error, it concluded that the exclusion was harmless given the overwhelming evidence confirming SW's story. *See Willoughby*, 742 F.3d at 235. Counsel was not deficient in following a direct order from this Court. Willoughby also faults counsel for not cross-examining SW as to whether she recanted a charge of her involvement in prostitution (Doc. 153 at 22–23). That statement was unrelated to Willoughby's offense and, like SW's earlier recantation, would have carried little weight given the overwhelming evidence of Willoughby's guilt.

Willoughby next argues counsel should have impeached SW with: (1) allegedly inconsistent writings and journal entries; (2) prior inconsistent grand jury testimony; (3) her immunity agreement; (4) prior acts of fraud and theft; (5) any prior juvenile or criminal records; and (6) assorted documents (*id.* at 24–25, 41–45, 47–49). As the Government asserts, these alleged inconsistencies in SW's writings and grand jury testimony are not fatal to her credibility. And more fundamentally, counsel's decision not to vigorously cross-examine SW reflects a sound trial strategy. SW was a sympathetic and highly credible witness, and counsel elected not to badger her in front of the jury. This strategic decision does not fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

Fourth, Willoughby contends counsel failed to investigate and object to evidence on grounds that the municipal court issued warrants through subterfuge or other illegal means (Doc. 153 at 25–28). Not so. Counsel raised the "subterfuge" issue during the December 12, 2011 motion hearing. After hearing testimony from the officers involved and speaking with Municipal Court Judge Kuhlman, this Court ruled that any defects in the search warrants were cured by the oral oath the judge administered (Doc. 86 at 46–47). Altogether, counsel filed five suppression motions, a motion for a *Franks* hearing, and a motion for a reliability hearing (*see* Docs. 33, 37, 53, 54, 59, 71). Far from the inadvertence and neglect Willoughby alleges in his Motion, counsel aggressively pursued exclusion of the search evidence.

■ Fifth, Willoughby charges counsel with failing to object when Government witnesses invaded the province of the jury. Specifically, Willoughby maintains that three witnesses usurped the jury's role by expressing, respectively: (1) SW was the victim of sex trafficking at Willoughby's hands; (2) the cellular phones used by Willoughby affected interstate commerce; and (3) the initial romantic relationship between Willoughby and SW shifted into prostitution (Doc. 153 at 28–29). Yet a witness's opinion generally does not invade the province of the jury even if it embraces an ultimate issue. *See* Federal Evidence Rule 704(a). Further, this Court specifically instructed the jurors that they were the sole judges of the facts, the credibility of the witnesses, and the weight of the evidence (Doc. 95 at 143–48). "A jury is presumed to follow instructions," *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000), and Willoughby offers nothing to rebut that presumption here.

■ Sixth, Willoughby faults counsel for failing to object to the Government referring to SW as a "victim" and Willoughby as a "pimp" (Doc. 153 at 29–31). Courts have allowed the use of such terms in the past, and Willoughby cites no authority to the contrary. *See, e.g., United States v. Rude,* 88 F.3d 1538, 1547–48 (9th Cir.1996) (holding that the term "victim" is "not even properly characterizable as slang," and noting that "the law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom").

■ Seventh, Willoughby contends counsel should have objected to admission of what he calls "inflammatory exhibits" (Doc. 153 at 30–31). These materials, all found in Willoughby's home, included books, maps, business cards, lists of truck stops, notes with phone numbers, and rap lyrics about pimping and prostitution. He also objects to a Bureau of Criminal Investigation laboratory report describing a DNA standard taken from him. Though Willoughby argues these materials were inadmissible because they spoke only to his bad character, the evidence corroborated SW's testimony and showed Willoughby was engaged in sex trafficking.

■ Eighth, Willoughby maintains counsel should have objected to the grand jury proceedings. He accuses the Government of forum shopping, noting that grand juries in both Toledo and Cleveland heard testimony, and complains that the second jury received only a summary of the initial proceedings (*id.* at 32–36). But the Government may disclose any grand jury matter to another federal grand jury. *See* Federal Criminal Rule 6(e)(3)(C). And the Supreme Court has "clearly contemplated" that an indicting grand jury might differ from the jury that heard testimony. *United States v. Bartel,* 19 F.3d 1105, 1111 (6th Cir.1994) (internal quotation marks omitted). "The Fifth Amendment requires

nothing more" than an indictment that is valid on its face, returned by a legally constituted and unbiased jury. *Costello v. United States,* 350 U.S. 359, 364, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Here, both grand juries convened in the Northern District of Ohio, and Willoughby offers nothing to suggest the Indictment was invalid on its face. Counsel was not deficient for failing to investigate and object to the Indictment on these grounds.

■ Ninth, Willoughby argues counsel should have objected to the Government's improper vouching and bolstering. Examples of this alleged misconduct include: (1) stating during closing argument that slight discrepancies in the witnesses' accounts actually increased their credibility; (2) suggesting that SW physically directed agents to a john's house when only the agents (and not SW herself) testified to that effect; (3) allowing one of the Government's witnesses, Agent Hardie, to sit at the prosecution table and testify to facts that SW did not corroborate; and (4) asking another witness, Detective Swartz, to testify about his job as a teacher and the courses he teaches (Doc. 153 at 36–41).

■ In reviewing allegations of prosecutorial misconduct, this Court asks whether the prosecutor's conduct was improper, and, if so, whether that misconduct was flagrant. *Bates v. Bell,* 402 F.3d 635, 641 (6th Cir.2005). "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility," while "[b]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *United States v. Francis,* 170 F.3d 546, 550–51 (6th Cir.1999). None of the statements Willoughby identifies fit either definition: the Government never stated a personal belief in a witness's credibility,

and contrary to Willoughby's assertions, the evidence referenced by the Government during trial was known to the jury through testimony. Moreover, witnesses often testify to their background and qualifications before being questioned.

■ Tenth, Willoughby faults counsel for failing to raise a Confrontation Clause objection to testimony about a john named Pistol (Doc. 153 at 41). At trial, SW said Pistol paid her for sex at Willoughby's house. Willoughby claims Pistol, if called as a witness, would have testified that he never had sex with SW in Willoughby's home. But the Confrontation Clause bars only "admission of testimonial statements of a witness who did not appear at trial." *Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Willoughby does not identify any testimonial statements from Pistol admitted against him; counsel therefore was not deficient in refraining from raising a Confrontation Clause objection.

■ Eleventh, Willoughby charges counsel with failing to cross-examine Amber Higginbotham with prior inconsistent statements to the grand jury (Doc. 153 at 45–47). Willoughby seizes on minor inconsistencies between Higginbotham's grand jury and trial testimony, including whether she saw Willoughby drop off *and* pick up SW on Lagrange Street, whether the photograph of SW Higginbotham was asked to identify was the same one used during grand jury proceedings, and whether SW called Willoughby from a store on Lagrange or, instead, one block over on Chestnut Street. None of these discrepancies call Willoughby's conviction into serious doubt. And in any event, counsel impeached Higginbotham's credibility with evidence of a prior felony conviction and criminal charges pending against her (Doc. 95 at 40–42). Counsel's failure to question Higginbotham on these specific points does not rise to the level of constitutionally deficient representation.

Twelfth, Willoughby argues counsel wrongly advised him not to testify in his own defense. He implies counsel told him not to testify for fear the Government would impeach him with his prior drug convictions (Doc. 153 at 54). Though Willoughby claims the Government could not impeach him with his felony convictions, he fails to explain why. *See* Federal Evidence Rule 609(a)(1)(B) (requiring admission of prior felony conviction if the probative value outweighs its prejudicial effect). And, given the overwhelming evidence of his guilt, there is no reasonable probability that Wiloughby's testimony would have influenced the verdict.

Thirteenth, Willoughby faults counsel for failing to independently test certain physical evidence, such as a tan pillow recovered from Willoughby's house containing DNA from both him and SW (*id.* at 50–51). He also says counsel should have investigated or obtained various photographs and interview transcripts (*id.* at 52). Willoughby claims that further testing or investigation of these materials would have uncovered exculpatory evidence, but fails to elaborate. This bald assertion cannot satisfy either *Strickland* prong.

Fourteenth, he alleges this Court wrongly suppressed social services records and thereby denied him the opportunity to argue SW suffers from a mental deficiency that leaves her unable to tell truth from fiction (*id.* at 54). But as the Sixth Circuit held, this Court's exclusion of certain evidence (including these records) under Rule 412 was harmless "[b]eyond any reasonable doubt." *Willoughby,* 742 F.3d at 235.

Finally, Willoughby cursorily alleges a host of other errors by counsel, including failing to: (1) obtain a slip of paper SW used to refresh her memory; (2) question

944

SW, Agent Hardie, and Detective Swartz regarding how SW directed law enforcement to the home of another john, Ed Miles; (3) cross-examine a witness to elicit another plausible reason, other than prostitution, that SW may have been at a hotel; and (4) cross-examine Miles with his earlier inability to identify a non-party prostitute (*id.* at 53–54). Willoughby fails to explain how these alleged errors either rendered counsel's performance constitutionally deficient or prejudiced Willoughby's defense.

### *Johnson* Does Not Retroactively Invalidate Willoughby's Sentence

In his Reply, Willoughby argues for the first time that the Supreme Court's recent decision in *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), invalidates his sentence. *Johnson* held the so-called "residual clause" of the Armed Career Criminal Act (ACCA) unconstitutionally vague. *See id.* at 2563. This Court found Willoughby qualified as a career offender under the identically worded residual clause of the Sentencing Guidelines, U.S.S.G. § 4B1.1, which the Sixth Circuit suggests might have been similarly invalidated by *Johnson*. *See, e.g., United States v. Darden*, 605 Fed.Appx. 545, 545–46 (6th Cir.2015) (per curiam). But while the Sixth Circuit has vacated Guideline sentences pending on direct appeal, Willoughby raises a question so far unanswered by *any* court: Can a prisoner use *Johnson* to collaterally attack his Section 4B1.1 career-offender designation in an initial habeas petition?

This Court thinks not. While a new rule of criminal procedure applies retroactively to all cases pending direct review, *see Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), a rule applies retroactively on *collateral* review only if it is: (1) a substantive rule, meaning one that carries "a significant risk that a defendant stands

convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him," *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); or (2) a "watershed" procedural rule "implicating the fundamental fairness and accuracy of the criminal proceeding ... on par with *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)," *O'Dell v. Netherland*, 521 U.S. 151, 167, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (internal quotation marks omitted).

The Government admits *Johnson* establishes a new, retroactive substantive rule as to the ACCA, but nonetheless argues it creates nothing more than a non-retroactive procedural rule as to the Sentencing Guidelines. Under the Government's rubric, Willoughby could use *Johnson* to challenge his sentence had he been designated an armed career criminal under the ACCA. But because he was sentenced under the identically worded Guidelines, he cannot. While perhaps counterintuitive at first blush, the Government's position tracks the logic of the Supreme Court's distinction between substantive and procedural rules.

*Johnson* creates a substantive rule as to the ACCA because designation as an armed career criminal necessarily alters the statutory range of available sentences. *See Schriro*, 542 U.S. at 352, 124 S.Ct. 2519. Section 4B1.1, on the other hand, takes statutory minimums and maximums as it finds them. Because the Sentencing Guidelines must always fit within the limits set by Congress, an erroneous career-offender designation carries no risk that a defendant "faces a punishment that the law cannot impose upon him." *Id.* In other words, a sentencing court always has the authority to vary up or down from the suggested sentence for career offenders.

The Government's position perhaps discounts the weight a Guidelines recommendation carries, as the Sixth Circuit holds that the farther a district court varies from the Guidelines range, "the more compelling the justification for variance must be." *United States v. Herrera–Zuniga,* 571 F.3d 568, 590 (6th Cir.2009). But with only the Supreme Court's retroactivity jurisprudence for guidance, this Court concludes *Johnson* does not establish a substantive rule as to the Sentencing Guidelines.

Nor does it create a "watershed" procedural rule on par with "the sweeping rule" of *Gideon. O'Dell,* 521 U.S. at 167, 117 S.Ct. 1969. A discretionary sentencing recommendation, even if erroneous, does not implicate "the fundamental fairness and accuracy of the criminal proceeding." *Id.* As a run-of-the-mill procedural rule, then, only those defendants with appeals pending at the time of the decision may take advantage. *See Griffith,* 479 U.S. at 328, 107 S.Ct. 708. This explains why the Supreme Court and the Sixth Circuit have vacated Section 4B1.1 sentences in then-pending direct appeals, *see United States v. Maldonado,* 581 Fed. Appx. 19 (2d Cir.2014), *vacated,* 576 U.S. ——, 135 S.Ct. 2929, 192 L.E.2d 966 (2015); *Darden,* 605 Fed.Appx. at 545–46, but have yet to suggest *Johnson* applies to Guidelines cases on collateral review.

Neither case cited by Willoughby in his Surreply (Doc. 163–1) counsels otherwise. While the Eleventh Circuit recently suggested *Johnson* would apply to a Sentencing Guidelines case on initial collateral review, the petitioner in that case was sentenced under the *mandatory,* pre-*Booker* Guidelines. *See In re Rivero,* 797 F.3d 986, 988, 991 (11th Cir.2015). And the Seventh Circuit found only that the petitioner made a "tenable claim" under *Johnson* and authorized the district court to decide "whether *Johnson* applies to

U.S.S.G. § 4B1.2(a)(2)" in the first instance. *See Stork v. United States,* 2015 WL 5915990, at *1 (7th Cir.2015). Because *Johnson* does not apply retroactively to Willoughby's sentence, this Court need not consider the merits of his claim.

CONCLUSION

For the foregoing reasons, Willoughby's Motion to Vacate, Set Aside, or Correct a Sentence (Doc. 149) is denied and his Motion to File Surreply (Doc. 163) is denied as moot.

Given the novel issue raised by Willoughby's *Johnson* retroactivity claim, this Court grants him a certificate of appealability as to that claim only. *See* 28 U.S.C. § 2253(c).

IT IS SO ORDERED.